## Johnson *et al. versus* Philadelphia *et al.*

1. Frankford Passenger Railway *v.* Philadelphia, 8 P. F. Smith 119, affirmed.

2. The imposition by the councils of Philadelphia of an annual sum on a city railway company's cars as a tax to raise revenue, would be an invasion of the chartered rights of the company and void.

3. But the imposition of a reasonable charge for a license, as a police regulation, although its incidental operation should augment the receipts into the treasury, is not invalid.

4. If a municipal regulation be lawful when intended for one purpose and unlawful if for another, the presumption is that the purpose was lawful unless it clearly appear otherwise.

5. The construction of charters is most strongly against the corporations or persons claiming rights under them, and most favorably to the public.

6. The exercise of a corporate franchise being restrictive of individual rights, cannot be extended beyond the letter and spirit of the charter.

7. The city imposed a license of $5 on each car of railway companies: a company afterwards entered into a bond required by ordinance for faithful

60    445
151   457

60    445
202   7576

60    445
24 SC 4 83
26 SC 4361
60    445
29 SC 4162
29 SC 5165

60    445
32 SC 3500

60    445
34 SC 2617
34 SC 4622

60    445
f 36 SC 4603
36 SC 4608

60    445
40SC 3 56

[Johnson *v.* Philadelphia.]

compliance with regulations, &c., as a condition for the consent of the city for the occupancy of the streets, &c. This did not constitute a contract with the city which could not be varied.

February 1st 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court at Nisi Prius in Equity: No. 38, to January Term 1864.

This was a bill by J. Warner Johnson and others, stockholders of The West Philadelphia Passenger Railway Company against the City of Philadelphia, George W. Schofield, Commissioner of Highways of the city, the said railway company and William Martin, Jr., its treasurer. The bill was filed January 27th 1864.

The bill sets out that the plaintiffs are stockholders in the railway company, which was incorporated May 14th 1857, and its powers extended by Acts of Assembly in the years 1858 and 1859; that the company were authorized to construct a passenger railway and carry passengers at rates of toll to be established by them on a designated route; that the railway should conform to the grades of the streets; that the councils of Philadelphia may prescribe tolls for the use by the railway company of the city railroad and regulations for the travel; that before the company should use the streets, the consent of the councils should be obtained, which should be presumed, unless within thirty days after the act of incorporation the councils should disapprove; that the councils may from time to time establish regulations in regard to the railway as to paving, culverting, laying gas pipes, &c.; that the councils did not dissent, &c. An ordinance of councils of July 7th 1857, amongst other things, required passenger railway companies to pay $5 annually to the city for each car. The bill further set out that the councils, on the 1st of April 1859, ordained that, in addition to the restrictions, conditions, &c., contained in an ordinance, July 7th 1857, to regulate passenger railways, all passenger railways should lay flag stones, &c., across the streets and alleys on which their rails were laid; that unpaved streets where the rails are laid should be kept in order by the companies; "that each passenger railway company shall pay into the office of the chief commissioner of highways, in the month of January of each year, for the use of the city, the sum of $30 for each car intended to be run upon any road, and for each car placed upon any road before the time herein provided for paying the license, a proportionate sum shall be paid until the succeeding January; and that no car shall be placed or run upon any road or street until it shall be regularly licensed, and a certificate duly numbered hung in a conspicuous place in said car;" that the companies shall lay plates, &c., over gutters, keep the gutters clean and keep a passage way, &c., for carts, &c.; that they should pave and repave and remove obstructions, &c.; that

[Johnson *v.* Philadelphia.]

for any violation of any of the provisions of the ordinance the company shall be liable to a penalty, and the running of the cars may be stopped. The bill averred that since the passage of the ordinance the company has annually paid the $30 for each car, protesting at the same time that they were not lawfully bound to do so; that the treasurer of the company is about to pay $30 on each car unless restrained by injunction; that the city has not authority to impose and exact the tax, &c. The prayer was that "the said railway company and its treasurer may be restrained from paying, and the said the city of Philadelphia and its chief commissioner of highways from receiving or exacting the said annual charge of $30 for each car intended to be run upon the railway of said company."

The defendants, amongst other things, averred in their answer:—

"That the power to provide for the proper regulation of vehicles for the conveyance of passengers can only be made effective by the issue of licenses in consideration of a reasonable annual sum, or a sum in gross to be paid therefor, and that said police powers are never exercised otherwise;

"That respondents are advised that a passenger railway car is not exempt from the police regulations which may be established by the city of Philadelphia, and the owners thereof may be required to pay a reasonable sum for licenses directed to be issued by said city, if such shall be deemed reasonable and necessary for police purposes; and

"That said sum of $30 on each car, to be paid for a license, was imposed for the necessary purpose of police, and not for the purpose of revenue, and respondents believe that said sum is a reasonable charge, although the contrary thereof is not averred in said bill."

And also that, by order of the directors of the company, the following obligation was filed in the office of the city solicitor on the 16th of April 1858:—

"KNOW ALL MEN BY THESE PRESENTS, That *Whereas*, By an ordinance of the select and common councils of the city of Philadelphia, approved the 7th day of July, A. D. 1857, entitled 'An ordinance to regulate passenger railways,' it was enacted that any passenger railroad company which was then or might thereafter be incorporated in the city of Philadelphia, should by their proper officer or officers, who should sign the same, file in the office of the city solicitor a written obligation to comply with the provisions of the said ordinance, under the penalty therein contained in default thereof. *And whereas*, The West Philadelphia Passenger Railway Company on the 7th day of September, A. D. 1857, filed in the office of the city solicitor an obligation under the seal of the said company and signed by the president and secretary thereof, reciting and covenanting as therein contained.

*And whereas*, The city solicitor has requested the said company, by a communication to the directors thereof, to file another obligation in the form herein set forth. *And whereas*, At a meeting of the board of directors of the said company, held on the 6th day of April, instant, the solicitor of the company was directed to have prepared and duly executed, an obligation, to be filed in the office of the city solicitor, in the amended form indicated in his communication : *Now know ye*, That the said The West Philadelphia Passenger Railway Company do hereby bind themselves and covenant to and with the City of Philadelphia in manner following, to say, That the said The West Philadelphia Passenger Railway Company, their successors and assigns, shall and will faithfully and truly comply with the provisions of the said ordinance, and perform and fulfil the conditions thereby laid and imposed upon them." Dated April 15th 1858.

The case was heard on bill and answer, and on the 19th of January 1867, the bill was dismissed by the judge at Nisi Prius. On appeal the plaintiffs assigned the decree of dismissal for error.

*T. Cuyler*, for appellant.—The franchise of the company to run cars over the streets is by the sovereign power of the Commonwealth : Philadelphia and Trenton R. R., 6 Wharton 25. The restrictions and conditions which the city may impose on the company, are defined in the company's charter, and all others are therefore excluded. The power to charge the annual sum of $30 is not one granted. By the bond of the company of April 15th 1858, and its acceptance by the city, it has been determined what the company would pay, to wit, $5 per car, and equity will restrain from collecting a larger amount : Second and Third Avenue Railway, 32 N. Y. R. 261. This is a tax imposed on the franchise which might result in prohibiting its use : Commonwealth *v.* Erie & N. E. R., 3 Casey 339; Susquehanna Canal Co. *v.* Bonham, 9 W. & S. 27; Ammant *v.* Turnpike Co. 13 S. & R. 210; Carbon Iron Company *v.* Carbon County, 3 Wright 251; N. Y. & Erie R. R. Co. *v.* Sabin, 2 Casey 242; The Gas Company *v.* Chester Co., 6 Casey 232; Lehigh Coal & Nav. Co. *v.* Northampton, 8 W. & S. 334; Schuylkill Nav. Co. *v.* Berks, 1 Jones 202; Lackawanna Iron Co. *v.* Luzerne, 6 Wright 424. Is it a license? The company derives its license from the Commonwealth : Stormfeltz *v.* Turnpike, 1 Harris 555; Mercer *v.* R. R., 12 Casey 99. The power to the city must be from express words in the charter : Faust *v.* Railway, 3 Phila. Rep. 164; Musser *v.* Railway, 7 Amer. Law Reg. 164; Philadelphia *v.* Railroad, 3 Grant 403; Pittsburg & B. R. R. *v.* Birmingham, 1 P. F. Smith 41; Second St. Pass. Railway *v.* City, Id. 465; Philadelphia *v.* Gray's Ferry R. R., 2 Id. 177; Commonwealth *v.* Railroad, 3 Casey 339; Acts of April 2d 1790, § 3, 2 Smith's Laws 526; April 15th

[Johnson v. Philadelphia.]

1850, § 12, Pamph. L. 468.    The power to license is strictly con-
strued : Chess v. Birmingham, 1 Grant 438 ; Bennet v. Borough,
7 Casey 15 ; Phillips v. Allen, 5 Wright 481.    It is not a police
regulation, which is a rule relating to something to promote the
safety or convenience of citizens.

*J. Lynd* (with whom was *T. J. Barger*), for appellees :—As to
the effect of giving the bond to comply with the ordinance of
1857 :

1. If the ordinance is to be construed as a contract, it is a bar-
tering away of the police power of the city; and it is therefore
void : Mott v. The Penna. R. R., 6 Casey 9 ; Brewster v. Hough,
10 New Hamp. 147 ; Goszler v. Georgetown, 6 Wheat. 598 ;
Milhau v. Sharp, 27 N. Y. 611 ; State of New York v. The
Mayor, 3 Duer 119 ; The Church v. The Mayor, 5 Cow. 538 ;
Faust v. R. R., 3 Phila. 168.

2. If the ordinance is a mere matter of legislation, then it is
subject to modification by subsequent councils.

3. It is certainly in the form of legislation, and is not in the
form of a contract.

In so far as the regulations were unlawful, the company was not
bound by them; nor could it enter into a valid agreement to be
bound by them : Faust v. The R. R. Co., *supra.*

4. But if the said ordinance was a contract, the consideration
moving to the appellants was " the consent of the city to the use
by them of the streets."

This was all the city gave for the obligation executed by the
appellees to observe the terms of the ordinance of July 7th 1857 :
Act of May 14th 1857, § 12, Pamph. L. 1858, 587.

The consideration was not the abandonment by the city of her
power of police regulation.

A corporation takes nothing by its charter, except what is
plainly, expressly and unequivocally granted : Bank of Pennsyl-
vania v. The Commonwealth, 7 Harris 155 ; The Commonwealth
v. Erie and N. E. R. R., 3 Casey 359 ; Southwark R. R. v. The
City, 11 Wright 323 ; Susquehanna Canal Co. v. Wright, 9 W. &
S. 11 ; Easton Bank v. Commonwealth, 10 Barr 442.

The opinion of the court was delivered, March 8th 1869, by
Sharswood, J.—This is a bill filed by the plaintiffs for themselves
and others, stockholders of the West Philadelphia Passenger Rail-
way Company, against the said company and the City of Philadel-
phia, praying that the company may be restrained from paying and
the city from receiving or exacting the annual charge of thirty
dollars for each car intended to be run on the railway of the
said company, under an ordinance of the said city, approved April
1st 1859.

10 P. F. Smith—29

[Johnson *v.* Philadelphia.]

The principal question involved in this controversy, was considered and decided by this court in The Frankford and Philadelphia Passenger Railway Company *v.* The City of Philadelphia, on a writ of error to the District Court for the city and county of Philadelphia, and the judgment of that court was affirmed March 2d 1868. Our Brother Read was not present on the hearing, and the same question has been now again argued before a full bench. A majority of the court adhere to the principles settled in that case. The opinion delivered by Mr. Justice Strong expresses so fully and well the grounds of the decision, that to add anything to it would be a work of supererogation.

It is to be remarked, that now, as then, no question is raised by the bill as to the reasonableness of the sum demanded as the price of a license. The power of the city to require any license or to exact any sum, is denied *in toto*, and to that ground for the interposition of the court only was the city called on to make answer. It cannot, therefore, properly enter into the consideration of the question as it is presented to us upon the pleadings.

It has, however, been strenuously contended, that the object of the city was to raise a revenue from the passenger railway companies by the ordinance in question, and the clause by which it is declared that the payment of the license fee is to be "for the use of the city," has been referred to as conclusively establishing this view. It is not denied by the defendants that the imposition of such a sum or any other upon the cars of the companies as a tax for the purpose of raising revenue, would be an invasion of their corporate franchises derived by grant from the Commonwealth, and therefore unlawful and void. But if it be admitted that the sum in question is a reasonable charge for a license as a police regulation (which we must assume), then its incidental operation in augmenting the receipts into the city treasury cannot invalidate it. Such is the necessary effect of all fines, penalties and forfeitures for the infringement of what are confessed to be valid ordinances. It is unnecessary to enumerate or specify. The digest of city ordinances abounds with them. The fact that such moneys are paid into the treasury for the general purposes of the municipality, has never been supposed to impress them with the character of taxes. In the case before us it may be allowable to conjecture that the principal object of requiring the license was to place some check upon the number of the cars employed on the road, so that the streets might not be unduly obstructed, and their passage by the citizens at large interfered with and prevented. If the sum charged was more than sufficient for this or any other proper object of police regulation, then indeed a question might arise as to whether it was not in effect a tax on the franchise. Whether it is so or not, in this instance, we are not called on to determine, and would not, therefore, be justified in

[Johnson v. Philadelphia.]

expressing any opinion. It is clear that the sum demanded and paid can only be for the use of the city, for if it were appropriated to the highway or police department, it would, to that extent, relieve the city treasury from a part of the expense of those departments, and its ultimate effect would be precisely the same. Certainly, if a municipal regulation is adopted, which would be lawful if intended for one purpose, and unlawful if for another, the presumption is that the purpose was lawful, unless the contrary clearly appear.

It has been contended, also, that the 12th section of the Act of Assembly, incorporating the West Philadelphia Passenger Railway Company, passed May 14th 1857, Pamph. L. 1858, p. 585, exempts that corporation from all municipal control, except what is therein expressed. That section provides that "said councils may from time to time by ordinance establish such regulations in regard to said railway as may be required for the paving, repaving, grading, culverting and laying of water and gas pipes in and along said streets, and to prevent obstructions therein." "*Expressio unius est exclusio alterius,*" argues the learned counsel for the plaintiffs. But surely, that is not the rule of construction applicable to charters. They are to be taken most strongly against the corporations or persons who claim rights or powers under them, and most favorably for the public: Mayor v. Railroad Co., 7 Georgia 221; Railroad Co. v. Briggs, 2 New Jersey 623; Packer v. Sunbury and Erie Railroad Co., 7 Harris 211; Com. v. Erie and North East R. R. Co., 3 Casey 339. The exercise of the corporate franchise being restrictive of individual rights, cannot be extended beyond the letter and spirt of the act of incorporation: Beatty v. The Lessee of Knowles, 4 Peters 168. In the charter of a company incorporated for the purpose of marine and fire insurance, the common provision expressly forbidding them from engaging in the business of banking, could not certainly be construed into an implied authority to engage in and carry on any other kind of business. The clause in question was no doubt inserted *ex majori cautela*, because it was feared that the express power conferred of laying the track of the road might be held to restrain the authority of the municipality in the particulars mentioned, but by no logic can it be inferred that the effect of this express saving is impliedly to take away their general power to regulate the use of public conveyances on the streets. It is unnecessary, therefore, to consider whether the reservation of the right to make regulations to prevent the obstruction of the street, is not broad enough to comprehend the very regulation now in question, as made for that object.

It is further urged that the ordinance of July 7th 1857, and the bond executed by the West Philadelphia Passenger Railway Company, dated April 15th 1858, conditioned that the company

[Johnson *v.* Philadelphia.]

shall "faithfully and truly comply with the provisions of the said ordinance, and perform and fulfil the conditions thereby laid and imposed upon them" constituted a contract, and that it was not competent for the city to vary the terms of that contract. It is not easy to see how a bond or other security to comply with existing rules and regulations can, without express words, be construed into a binding engagement to make no other rules or regulations which it is within the lawful authority of the obligors to make, even if the municipality had the power to barter away any portion of its legislative functions, a power which has been questioned, if not denied: Goszler *v.* The Corporation of Georgetown, 6 Wheaton 593. The security may be gone, but it cannot affect the rights or obligations of the parties which are independent of it. The bond, as appears by the 9th section of the ordinance of July 7th 1857, was exacted by the city as the condition of its consent to the use and occupation of the streets by the railway company under the 12th section of their charter, and the ordinance included many provisions which could not have been required without the consent of the company. Certainly without express words the city cannot be held to have surrendered any portion of its lawful authority over the streets and those who use them for the purpose of the conveyance of passengers or merchandise, whether corporations or natural persons.

Decree affirmed at the costs of the appellants.

THOMPSON, C. J., dissents.