## Oil City v. Oil City Trust Co., Appellant.

*Police powers—License fee—Power of legislature.*

What business or occupation so far affects the public welfare and good order as to require to be licensed, is a matter of legislative consideration and control, which when exercised in good faith is outside of the jurisdiction of the courts.

Where a license fee on occupation is imposed under the police power, and its good faith and the reasonableness of its amount are not questioned, the presumption is that it is what it professes to be, although apparently imposed with an eye to the increase of revenue.

*Bank license—Tax—Exemption—Acts of 1874, 1885 and 1889.*

The act of June 30, 1885, § 3, P. L. 193, exempting banks from local tax on payment of state tax, does not exempt banks in such case from the payment of a license tax under the act of May 23, 1874, § 20, cl. 4, P. L. 239, such license tax being incidental to the exercise of the police power.

The license tax on banks authorized by the act of May 23, 1889, P. L. 277, being for general revenue purposes, banks are exempt from payment of it upon compliance with the exempting provisions of the act of 1885.

Argued Oct. 6, 1892. Appeal, No. 171, Oct. T., 1892, by defendant, from judgment of C. P. Venango Co., on verdict for plaintiff. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit for license tax against state banks.

The facts appear by the opinion of the court below entering judgment on reserved point, as follows, by TAYLOR, P. J.:

"Under the evidence the jury were instructed to return a verdict for the plaintiff for the amount of the plaintiff's claim, subject to the question of law reserved, to wit: Whether the defendant, having elected to and paid the state tax of six mills upon their capital stock, was not exempt thereby from the payment of the charges in controversy to the city. If the court should be of the opinion that the defendant was not exempt, then judgment for the plaintiff upon the verdict; but if the court should be of the opinion that the defendant was exempt, then judgment for the defendant, non obstante veredicto. The defendant is a corporation or association of individuals, doing a general banking business in the city of Oil City. In 1881 the city of Oil City became a city of the third class, under the act of 1874, known as the Wallace act. Under this act, cities

of the third class were, inter alia, empowered under clause 4 to levy and collect license tax on auctioneers, contractors, druggists, bankers, peddlers, etc., and regulate the same by ordinance. Under an ordinance approved May 29, 1885, all banks doing business in this city were required to pay a license of $50 per annum. The validity of the ordinance was not attacked, except in so far as its power to levy and collect the license fee in controversy is concerned, and the disposition of this question, in my opinion, is reduced to a single proposition, viz.: Is the charge in controversy a tax, or is it a license fee, under the police regulation? If it be a tax for revenue, the plaintiff cannot recover, whether it be denominated a tax or a license fee. The taxing power is to be distinguished from the police power, and the power to license and regulate particular branches of business or matters is usually a police power, but when license fees or exactions are plainly imposed for the sole and main purpose of revenue, they are in effect taxes: Dillon on Municipal Corporations, section 609; see also Ibid., sections 291–296, inclusive, and the numerous citations in the foot notes. In Franklin & Philadelphia Passenger Railroad Co. v. Phila., 58 Pa. 119, under an ordinance, the city imposed a license tax of $50 on each street car run by the company in the city; this was held a valid ordinance as a police regulation. The same principle is affirmed in Johnson v. Phila., 60 Pa. 445, where it was held, inter alia, that the imposition of a reasonable charge for a license, as a police regulation, although its incidental operation should augment the receipts into the treasury, is not invalid, and that if a municipal regulation, when intended for one purpose, is lawful, and unlawful if for another, the presumption is that the purpose is lawful, unless it clearly appears otherwise. There is nothing in this case we are now considering from which it could be inferred, nor is it contended by counsel for the defendant that the license fee charged is an unreasonable one, and in the absence of anything appearing to the contrary, the presumption is that it is a reasonable one; see cases last cited. For the reason given, I am of the opinion that the charges in controversy are not a tax, but a reasonable license fee, valid under the city police regulation. And now, to wit: April 4, 1892, it is ordered that judgment be entered for the plaintiff on the verdict."

Defendant then took this appeal.

*Errors assigned* were, among others, (3) entering judgment for plaintiff; and (4) not entering judgment for defendant.

*F. W. Hays*, for appellant.—The acts of June 30, 1885, § 3, P. L. 193, and June 1, 1889, § 25, P. L. 433, distinctly exempt the shares, capital and profits of the bank from local taxation, upon payment of the state tax prescribed; if therefore the claim here is such tax, plaintiff cannot recover. A tax on the business is a tax on the capital: Iron City Bank v. Pittsburgh, 37 Pa. 343; Pittsburgh v. Bank, 55 Pa. 49; Osborn v. Bank, 9 Wheat. 861. The act of 1889 provides for levying license taxes for " general revenue purposes." The license under the act of 1874 is a tax also. It could not be valid as a police regulation. The imposition of a license fee or tax, in order to be supported as a police regulation, must serve some public purpose, relating to the health, comfort, peace or convenience of the inhabitants: Dillon, Mun. Corp. §§ 93, 609. In Franklin & Phila. Pass. Ry. v. Phila., 58 Pa. 119, and Johnson v. Phila., 60 Pa. 445, the objects of the regulation were within the police powers. The tax in hand can serve no public end except to augment the public funds.

*Isaac Ash*, city solicitor, *P. M. Spear* with him, for appellee.—A license fee imposed upon a business, under authority granted to " license and regulate " is purely a police regulation: Dillon, Mun. Corp., 2d ed. §§ 79, 291, 593, 609; Ash v. People, 11 Mich. 347; Chilvers v. People, 11 Mich. 43; Mayor v. Yuille, 3 Ala. 137; Boston v. Schaffer, 9 Pick. 415; Franklin & Phila. Pass. Ry. v. Phila., 58 Pa. 119; and that the money is paid into the treasury for general purposes does not make it a tax: Johnson v. Phila., 60 Pa. 445.

The act of 1885 is a supplement to the act of 1879; it leaves unrepealed the tax on net earnings of banks imposed by § 10 of the act of 1879, P. L. 118. Section 3 of the act of 1885 provides for exemption from tax on shares or capital and profit. This does not include an occupation tax, even if the license fee in this case be considered a tax.

OPINION BY MR. JUSTICE MITCHELL, October 31, 1892.

The learned judge rightly held that the test of the charge in controversy was whether it was a license fee under the po-

lice power, or a tax for revenue. On its face it purports to be a license fee on the occupation of banking, and though we may suppose it was not imposed without an eye to the increase of revenue, yet its good faith and the reasonableness of its amount are not questioned here, and the presumption therefore is that it is what it professes to be: Johnson v. Philadelphia, 60 Pa. 445.

The appellant argues that banks are not specially subjects of the police power, and quoting Dillon on Municipal Corporations, sect. 141 (edition of 1890) that " laws and ordinances relating to the comfort, health, convenience, good order and general welfare of the inhabitants are comprehensively called police laws or regulations," asks wherein does the regulation or licensing of the business of banking relate to the comfort, health or good order of the community ? We are not required to answer this question further than to say that it is a matter for legislative determination. Certain occupations, such as tavern keeping, theatrical and kindred shows, public conveyances, barges, etc., were regulated by license in England before the settlement of Pennsylvania, and the colonists brought with them the idea of state control of such matters. Others, such as auctioneers, hawkers and peddlers, etc., were licensed by statute so early and so continuously in the history of our legislation that their appropriateness as subjects of license became familiar as part of the common law of Pennsylvania. Thus actioneers were classed with hawkers, peddlers, and petty chapmen in " an act for regulating peddlers, vendues," etc., passed February 14, 1729–30, and have been subject to license regulations almost if not quite continuously from that date.

Banks are not so obviously within the sphere of police regulations as to be familiar to us as subjects of municipal license, yet it might not be any more difficult to name reasons why they should be than in the case of auctioneers, had not long familiarity with the licensing of the latter led us to accept it without question. What business or occupations so far affect the public welfare and good order as to require to be licensed, is a matter of legislative consideration and control, which when exercised in good faith are outside of the jurisdiction of the courts.

The ordinance in present controversy rests upon the authority ,of the act of May 23, 1874, sect. 20, clause 4, P. L. 239 which

in express terms confers on cities of the third class power " to
levy and collect license tax on auctioneers . . . . bankers," etc.
As already said, the good faith of the ordinance as an exercise
of the delegated authority and the reasonableness of the amount
for the lawful purpose, not being questioned, we cannot go be-
hind the clear statutory grant of power.

The act of June 30, 1885, sect. 3, P. L. 193, provides that
as to any bank electing to pay into the state treasury a tax of
six tenths of one percentum upon the par value of all its shares,
" the shares and so much of the capital and profits . . . . as
shall not be invested in real estate shall be exempt from all
other taxation under the laws of this commonwealth." The
word taxation here is used in its ordinary and proper meaning
of a charge for the support of the state or some of its subordi-
nate municipal agencies, and clearly does not refer to a charge
merely incidental to the exercise of the police power. The
act therefore does not exempt banks from the power of cities
to impose a license tax under the act of 1874, and the learned
judge below was right in so holding.

A distinction however has been made here to which the
learned judge does not refer in his opinion, and to which his
attention was probably not called. The judgment is for the
license tax for the years 1886 to 1890 inclusive. As already
said banks are not intrinsically and obviously subjects of license
under the police power by the common law of this state. They
become such by statute only, and the license fees recovered in
the present case rest on the authority of the act of 1874. But
that act was supplied and repealed by the act of May 23, 1889,
P. L. 277. The act of 1874 confers the taxing powers for reve-
nue in clauses 1, 2 & 3, of sect. 20, P. L. 238, the license tax
power in clause 4, and then, in the following clauses, enumer-
ates expressly the most usual and important police powers,
over tippling houses, games and gambling houses, sanitary and
quarantine regulations, etc. In this act the licensing of banks
is apparently intended to be classed under police powers. The
act of 1889 however enumerates and classifies the various
municipal powers more fully and more accurately. Article V,
sect. 3, clauses 1, 2 & 3 of the act of 1889 follow closely the
language of clauses 1, 2 & 3 of sect. 20 of the act of 1874, and
clause 4, like that of the prior act, relates to license taxes, but

makes this important change in the language, "to levy and collect, for *general revenue purposes*, a license tax," etc., enumerating many kinds of business and occupation, but significantly omitting shows, theatres, etc., included in the corresponding section of the act of 1874. Then follow a number of clauses relating also to the revenue, as power to borrow money, to fund indebtedness, rates of interest, etc., and it is not until clause 16 that the usual police powers are reached, among which in clause 25 is included the power " to license and collect license tax from skating rinks, theatres," etc.

By the express language of clause 4 above referred to the authority given to cities by this act to license bankers is for general revenue, and as if to emphasize the change of legislative purpose, the grant is transferred from its previous place in the enumeration of police powers to a place among the powers of taxation for revenue. It is therefore unquestionably a tax in the general sense and we have to consider whether appellant is exempted from it by the acts of June 30, 1885, and June 1, 1889. Of this there can be no doubt. The language of the act of 1885, sect 3, has already been quoted. It exempts from " all other taxation under the laws of this commonwealth." The words could not be broader. They apply not only to taxation for state but also for local purposes, and that they were intended to do so is clear from the exception of capital, etc., " not invested in real estate." It is matter of public history that there was no state tax on real estate in 1885 or for many years prior, and if exemption from local taxation was not intended it is hardly supposable that the legislature would have inserted an entirely unnecessary and useless clause. But to put the matter beyond all possible question, the act of June 1, 1889, sect. 25, P. L. 433, changes the language previously used and makes the exemption " from local taxation, under the laws of this commonwealth."

The result therefore is that banks are only subject to license tax by municipalities by virtue of express legislative authority ; that the only authority shown in cities of the third class since the act of 1889 is to license as a tax for revenue purposes ; and that as to such tax the appellant was exempt during the years 1889 and 1890.

The judgment must therefore be reversed as to these years

but as the facts are all set out in the point reserved we can enter the proper judgment without the delay and expense of a new trial.

Judgment reversed, and now judgment entered for plaintiff below $150 for the license tax for the years 1886, 1887 and 1888. Costs of this appeal to be paid by appellee.