# Lansdowne Borough *v.* Springfield Water Company.

*Municipalities—Ordinances—Invalidity of portion of ordinance.*

One section of an ordinance may be declared reasonable and valid while another section of the same ordinance may be pronounced unreasonable and void.

*Boroughs—Ordinance—License to open streets—Water companies.*

A borough ordinance providing that the roadway of any street shall not be opened or any street tunneled by any person, firm, association or corporation, for the purpose of making connection with or repairing any underground service laid thereunder, until a permit so to do shall have been obtained, applies to a water company that has a water main under a street.

The right of a private corporation to break up the public highways of a municipality in the exercise of a franchise conferred upon it by an act of assembly is necessarily subject to the reasonable municipal regulations of the district, enacted for the common good of all its inhabitants, unless specially excluded by the act conferring the right. A company that is required to obtain municipal consent and after obtaining it has entered upon the streets, is in precisely the same situation so far as its being subject to police regulation is concerned as a company that is not required to obtain such consent, or that entered upon and was in the lawful use of the streets prior to the incorporation of the borough or city.

*Boroughs—Water companies—Ordinances—License to open streets—Act of May 16, 1899, P. L. 226.*

An ordinance of a borough imposing a license fee on a water company

for making openings in streets, is covered by the language of the Act of May 16, 1889, P. L. 226, which makes water companies subject to " such regulations as the councils of said borough, town, city or district may adopt in regard to grades, or for the protection and convenience of public travel over the same."

*Boroughs—Ordinances—Water companies—Reasonableness of license fee for opening streets.*

A borough ordinance imposing a fee of $2.00 for opening an unpaved street, of $6.00 for opening a street paved with belgian blocks, or macadamized, and $8.00 for opening a street paved with asphalt or granolithic pavement is not unreasonable, and the fees so charged are not so grossly disproportioned to the expense of issuing the permit and the probable expense of proper inspection, regulation and police surveillance as to warrant the court in declaring them unreasonable. Such fees may be recovered by an action of assumpsit.

Argued Nov. 19, 1900. Appeal, No. 232, Oct. T., 1899, by defendant, from order of C. P. Delaware Co., June T., 1899, No. 146, making absolute a rule for judgment for want of a sufficient affidavit of defense in case of Lansdowne Borough v. Springfield Water Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Appeal from a judgment of a justice of the peace.

Rule for judgment for want of a sufficient affidavit of defense.

From the record it appeared that the suit was brought to recover $6.00 for the price of a permit to break into and open a street in the borough. The defendant filed an affidavit of defense in which it averred that it had the right to open the roadway to make repairs to its water mains without taking out a permit; that the ordinance did not apply to the repair of leaks in mains, that the borough did not possess the power to require the defendant to take out a permit to repair leaks, and that the ordinance was unreasonable.

The terms of the ordinance are fully set out in the opinion of the Superior Court.

The court made absolute a rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*E. H. Hall,* for appellant.—The defendant derives its power from the general corporation act of 1874, and by the act of

1874, as amended by the act of May 16, 1889, P. L. 226, and its right of entry upon the streets, lanes, etc., of the plaintiff borough is subject only to such regulations as the council shall adopt: Pittsburg's App., 115 Pa. 21; Philadelphia v. Trenton R. R. Co., 6 Wharton, 44; Attorney General v. Lombard & South St. Pass. Ry. Co., 1 W. N. C. 491.

There is not the same reason for sustaining a permit fee in the case of a water company as there is in a gas company, electric light, or telephone or telegraph company: Pennsylvania R. R. Co. v. Duquesne Borough, 46 Pa. 154; Borough of West Chester v. Apple, 35 Pa. 284; Fitzpatrick v. Darby Borough, 184 Pa. 646.

Even when a municipality has the power to give or withhold its assent to enter upon the streets, it must exercise that power and cannot couple with its assent any condition or restriction not imposed by the act of assembly: Pittsburg's App., 115 Pa. 21; Millerstown v. Bell, 123 Pa. 154.

This ordinance does not apply nor was intended to apply to repair of mains.

It is respectfully contended that the borough is without authority to pass an ordinance requiring a permit to be taken out by the company defendant for the purpose of repairing its mains: Commissioners of the Northern Liberties v. Northern Liberties Gas Co., 12 Pa. 321; Frankford, etc., Pass. Ry. Co. v. Phila., 58 Pa. 119; Reading City v. Bitting, 167 Pa. 21; Millerstown v. Bell, 123 Pa. 154.

*Fred Taylor Pusey*, for appellee, cited: Phila. Steam Supply Co. v. Philadelphia, 41 Legal Int. 252; Northern Liberties v. Northern Liberties Gas Co., 12 Pa. 321; Western Union Telegraph Co. v. Phila., 22 W. N. C. 39; Ridley Park Borough v. Citizen's Electric Light & Power Co., 9 Pa. Superior Ct. 615; Allentown v. Western Union Tel. Co., 148 Pa. 117; Chester v. Western Union Tel. Co., 154 Pa. 464; Allegheny v. People's Natural Gas & Pipeage Co., 172 Pa. 632; Frankford & Phila. Pass. Ry. Co. v. Phila., 58 Pa. 119.

OPINION BY RICE, P. J., March 19, 1901:

Section one of the borough ordinance under consideration provides that the roadway of any street shall not be opened or any

street tunneled by any person, firm, association or corporation for the purpose of making connection with or repairing any underground service laid thereunder until a permit so to do shall have been obtained, as provided in section two. Section two provides that any person, firm, association or corporation desiring to break a street shall present an application to the highway committee setting forth in full the place where and the particular object for which the street is to be broken or tunneled, together with the kind of pavement, if any, laid in such street. Thereupon it becomes the duty of the highway committee to give the applicant a certificate setting forth in detail the information contained in the application, which certificate it is the applicant's duty to present to the highway commissioner. Upon production of the latter's receipt for the prescribed fee, it is the duty of the highway committee to issue to the applicant a permit, which " shall be full and sufficient authority for such applicant to break the street, subject only to the supervision of the highway commissioner as now provided by law." The fee for a permit in an unpaved street is $2.00, in a street paved with belgian blocks or macadamized, $6.00, and in a street paved with asphalt or granolithic pavement, $8.00. The seventh section of the ordinance provides that any person violating any of its provisions shall be subject to a fine of $50.00, to be collected as like penalties are now collected.

The defendant was duly incorporated under the laws of the commonwealth and owned and lawfully maintained a system of pipes laid under the streets of the borough for the purpose of supplying water to the public. It is admitted, that, for the purpose of repairing a leak in its distributing main, it broke, and made an excavation in the roadway of a macadamized street without obtaining, or endeavoring to obtain, a permit and paying the fee therefor. This action was brought to recover the fee.

It is to be observed that there is no allegation that there was any such emergency as made it necessary to do the work without the delay that would have been incident to applying for and obtaining a permit. Whether the penal provision of the ordinance could be enforced in such a case may well be doubted. But as the validity of that section is not directly in question in the present case, we need not discuss it. If part of an ordi-

nance or a by-law be void, another essential and connected part of the same is also void. But it must be essential and connected to have that effect: 1 Dillon's Municipal Corps. sec. 421; Trickett's Borough Law, 125 ; Verona Borough's Appeal, 108 Pa. 83. " One section of an ordinance may be declared reasonable and valid, while another section of the same ordinance may be pronounced unreasonable and void: " Pittsburg's Appeal, 115 Pa. 4. We shall confine our attention in the present case to the sections imposing the license fee.

The defense is based on two grounds, first, that the ordinance was not intended to apply to the repair of a distributing water main; second, that the borough did not have the power by ordinance to require the defendant company to obtain a permit to open the streets for the purpose of repairing its mains, or to pay a fee therefor.

We are unable to adopt the construction contended for by the defendant's counsel. The ordinance is general in its terms, including, not only water companies, but all persons, firms or corporations maintaining " any underground service" in the streets. It seems too plain for argument that a water main is part of the underground service maintained by a water company, and there is nothing in the context to show that in the use of these terms the council had in view merely the service pipes connecting houses with the mains. The language " making connection with or repairing any underground service" shows conclusively that opening the street for repairing the main, as well as for making connection with it, was had in view.

Whether or not a water company is required to obtain the consent of the councils of the city or borough before entering upon the streets for the purposes of its charter, seems to us an immaterial question in the present case. " The right of a private corporation to break up the public highways of a municipality in the exercise of a franchise conferred upon them by an act of assembly is necessarily subject to the reasonable municipal regulations of the district, enacted for the common good of all its inhabitants, unless specially excluded by the act conferring the right:" Commissioners of Northern Liberties v. Northern Liberties Gas Co., 12 Pa. 318; Frankford & Phila. Pass. Ry. Co. v. Philadelphia, 58 Pa. 119; Phila. Steam Supply Co.

v. Philadelphia, 15 W. N. C. 57. A company that is required to obtain municipal consent, and after obtaining it has entered upon the streets, is in precisely the same situation so far as its being subject to police regulation is concerned as a company that is not required to obtain such consent. The municipality has no greater authority to abridge or interfere with the franchises granted by the legislature in the one case than in the other. According to the doctrine of the above cited cases and many others that might be cited, its power to make reasonable police regulations is independent of, and not merely incidental to, the power to grant or withhold consent to the use of the streets by the corporation. There is, therefore, no warrant for holding that such an ordinance as this, although valid as to a corporation that was required to obtain municipal consent and entered upon the streets pursuant thereto, is not valid as to a corporation that was not required by the general corporation laws to obtain such consent, or that entered upon, and was in the lawful use of, the streets prior to the incorporation of the borough or city.

It is argued further, that a water company incorporated under the act of 1874, as amended by the act of 1889, is subject to such regulations only as are expressly mentioned in the latter act, namely, "such regulations as the councils of said borough, town, city or district may adopt in regard to grades or for the protection and convenience of public travel over the same." It is claimed that this is not such a regulation. A similar argument was made in Johnson v. Philadelphia, 60 Pa. 445, but was not sustained. We quote from the opinion of Justice SHARSWOOD: "Expressio unius est exclusio alterius, argues the learned counsel for the plaintiffs. But surely, that is not the rule of construction applicable to charters. They are to be taken most strongly against the corporations or persons who claim rights or powers under them, and most favorably for the public. . . . The clause in question was no doubt inserted ex majore cautela, because it was feared that the express power conferred of laying the track of the road might be held to restrain the authority of the municipality in the particulars mentioned, but by no logic can it be inferred that the effect of this express saving is impliedly to take away the general power to regulate the use of public conveyances on the street." So we

conclude here that the language of the act above quoted is not to be construed as restrictive of the powers of cities and boroughs under the general laws governing them, but as declaratory of some of those powers. We might go further and concede that the municipality has only such powers in the premises as are expressly recognized in the act under which the defendant was incorporated, without being driven to the conclusion that the ordinance under consideration was not a valid exercise thereof. As the counsel for the appellee well says, it is reasonable and proper that the borough authorities should be promptly informed of excavations made in the streets in order that they may provide for the safety and convenience of the public travel. This seems to be the purpose of the ordinance. Properly construed and carried into execution it is a reasonable regulation well calculated to secure the rights of the general public in the highways, without abridging or impairing in any way the special privileges conferred upon the corporation. If the borough were asserting the right to grant or refuse permission to the defendant to make excavations for the purpose of repairing its mains or making connections therewith, this would be destructive of the franchises conferred by the state by virtue of its paramount authority over the highways, and could not be sustained. But no such right is, or can, be asserted under this ordinance. The permit issues as a matter of course upon compliance with reasonable conditions, and the fee charged is not so grossly disproportioned to the expense of issuing it and the probable expense of proper inspection regulation and police surveillance as to warrant us in declaring it unreasonable. The presumption is that it was imposed for these purposes and not for revenue or as a return for the permission to carry on the business (as was the case in Wilkes-Barre v. Crystal Spring Water Co., 7 Kulp, 31), for which the defendant was incorporated. "Certainly, if a municipal regulation is adopted, which would be lawful if intended for one purpose, and unlawful if for another, the presumption is that the purpose was lawful, unless the contrary clearly appears : " Johnson v. Philadelphia, supra ; Oil City v. Oil City Trust Co., 151 Pa. 454. Without further elaboration our conclusion is, that the case comes fairly within the principles recognized and applied in the telegraph, telephone, electric light and street rail-

way cases, in which ordinances imposing reasonable license fees have been sustained as a legitimate exercise of the police power delegated to municipalities. Many, if not all, of the cases, are collected in New Hope v. Western Union Tel. Co., and need not be cited here.

These cases may also be referred to as precedents for the recovery of the license fee by action. This question was very carefully considered by Judge McPHERSON in Taylor Boro. v. Central Penna. Tel. & Supply Co., 8 Pa. Dist. Reps. 92, and the right of recovery sustained upon the ground, that if the borough had lawful authority to impose such a fee, the defendant's duty to pay would at once arise; and as this duty would have been enforceable before the procedure act of 1887, by an action of debt, it is now enforceable by an action of assumpsit. We also cite Washington Boro. v. McGeorge, 146 Pa. 248, and Stockwell v. United States, 13 Wall. 542. In view of the precedents, we cannot say that the action is not sustainable; but whatever difficulty we might have had upon that question was removed by the agreement of counsel filed on the argument of the case.

Judgment affirmed.