# Gettysburg Borough *v.* Gettysburg Transit Company, Appellant.

*Practice, C. P.—Trial by court without a jury—Form of the decision —Act of April* 22, 1874, *P. L. 109.*

Where a case is tried by the court without a jury under the Act of April 22, 1874, P. L. 109, the fact that the judge's discussion of the pertinent legal principles and authorities does not follow, but precedes his statement of the final conclusion or conclusions of law, is not ground for valid objection to the form of the decision.

*Boroughs—Ordinance—Police power—License tax—Street railways.*

A license tax imposed by a borough ordinance on street cars is not invalid because there is no allusion therein to police inspection and regulation.

If a license tax is lawful if intended for police regulation, but is unlawful if intended for revenue purposes, the presumption is that the purpose of the ordinance was lawful, unless the contrary clearly appears.

The burden of proving the reasonableness of an ordinance imposing a license tax on street railway cars is not upon the borough imposing the tax, but upon the street railway company owning the cars.

The courts will not declare such an ordinance void because of the alleged unreasonableness of the fee charged, unless the unreasonableness be so clearly apparent as to demonstrate an abuse of discretion on the part of the municipal authorities.

An annual license tax on a street car imposed as police regulation includes more than a mere periodical inspection of the cars by the municipality. Such a tax is a specific charge to meet the entire expense of the duty of regulation, inspection and supervision cast upon the municipality with respect to the manner in which the company is exercising its privilege.

The fact that a borough neglects some part of its supervisory duty as to cars during the year, is not, standing alone, a bar to an action to recover a reasonable license fee for a particular year which was due and collectible at the beginning of the year.

In a proceeding by a borough against a street railway company to recover an annual license tax on street cars, the company may show the existence of another ordinance whereby street railway companies were obliged to pay an annual sum of fifty cents for each pole carrying overhead wires.

A license fee which might be reasonable, if intended to cover the probable expense incident to proper police supervision and inspection

of the railway, and its operation as a whole, may be excessive and unreasonable when considered in connection with the fact, that under another ordinance an additional license fee is exacted for the inspection and supervision of poles and wires.

The probable additional cost to a borough of maintaining and keeping in repair the portions outside the tracks of the streets on which an electric railway is lawfully operated under municipal consent, cannot be included in the license fee imposed by the municipality in the exercise of its police power.

In an action by a borough against a street railway company to recover an annual license tax on street cars, it is error to consider evidence to the effect that in consequence of the occupation of the streets by the railway tracks, and the kind of rail used, the great burden of travel is cast upon the sides of the streets and this increases the costs to the borough of repairing and maintaining them.

Argued March 10, 1908. Appeal, No. 12, March T., 1908, by defendant, from judgment of C. P. Adams Co., Jan. T., 1906, No. 1, for plaintiff on case tried by court without a jury in suit of Gettysburg Borough v. Gettysburg Transit Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit for the collection of a license tax on street cars.

The case was tried by SWOPE, P. J., without a jury under the act of April 22, 1874.

The opinion of the court was as follows:

The plaintiff borough in this action is seeking to recover from the defendant company the sum of $151, with interest from June 1, 1905, for an annual license fee from June 1, 1904, to June 1, 1905, of $50.00 each on three cars, and $1.00 for an additional car run on one day during said year.

The defendant company refuses payment of this claim for the reason that the ordinance under which its payment is attempted to be enforced is unreasonable and was enacted as a mere revenue measure.

By agreement of parties the matter has been submitted to the court on testimony and argument.

We find the following facts which we think are all that are necessary for the proper determination of this contention:

The Gettysburg Transit Company is a corporation duly incorporated by the state of Pennsylvania, and is successor to the rights and franchises of the Gettysburg Electric Railway Company.

The burgess and town council of the borough of Gettysburg, by ordinance duly approved July 31, 1891, granted permission to the Gettysburg Electric Railway Company to construct and operate a single track electric railway with the necessary tracks, turnouts, turntables, sidings and switches, and to erect the necessary poles and suspend thereon wires on the following streets, viz.: On Carlisle street from the Western Maryland railroad station to the Center square and from thence to the borough limits. On Chambersburg street and the Springs Hotel road from the Public Square to the borough limits. And on Washington street and the Taneytown road from the Philadelphia and Reading railroad station to the borough limits.

This electric railroad was constructed on positions of said streets in the borough of Gettysburg in compliance with the provisions of the ordinance of July 31, 1891, and other ordinances passed by said borough.

The conditions of these ordinances are largely immaterial to our present inquiry and we need mention but few of them.

The rail used in the construction of this railroad is known as the "T" rail, and the guage of the railway is four feet eight and one-half inches.

The company is required to pike the portions of all the streets included between rails of its tracks and also two feet on both sides with such crushed stone or other material made firm and solid with heavy rollers as shall be satisfactory to the committee on streets.

The said company is also obliged to save and keep the borough of Gettysburg harmless from any damage that may be done to persons, corporations or property by reason of the construction and operation of said railway.

On July 2, 1895, the following ordinance of the borough of Gettysburg was duly approved: "That all street railway companies which now occupy or which may hereafter occupy

or acquire the right to occupy any of the streets, avenues or public thoroughfares of the borough of Gettysburg, shall within thirty days from the passage of this ordinance, and annually thereafter, before the 1st day of June, pay an annual license fee of $50 for each and every car run or propelled along or upon the streets, avenues or public thoroughfares aforesaid, and each car so run or propelled shall be numbered and have its number painted in a conspicuous place and a certificate of license duly numbered shall be hung in each."

For years the defendant company and its predecessor in title have paid this license.

At the request of the defendant company, the town council, in 1904, as appears by their minutes, passed a certain resolution whereby the enforcement of the above-mentioned ordinance was so modified that but $50.00 per year was to be paid on three cars each only and $1.00 per day on each car above three run on any one day.

This is all the fee now sought to be collected by the borough under the ordinance of June 2, 1895, as modified by their subsequent action, and, as before stated, $50.00 each for three cars, and $1.00 for an additional car used during the year, is all that is sought to be recovered in this suit.

The defendant company has six cars which it owns and to some extent operates. They are all unusually heavy and large cars, having considerably more carrying capacity than the ordinary trolley cars.

This may be said to be purely an excursion railroad, transporting tourists over the streets of Gettysburg to and from the battlefield.

It is operated only one-half the year from about May 30th to November. During the balance of the year there is no pretense of operation, and the borough is left with the annoyance of tracks, poles and wires, without any compensating public service in any way.

During the summer and fall months, the road at times is operated to its full capacity to meet the demand of big days and excursions which are not unfrequent here. At times the road is entirely unable to accommodate the demand of visitors,

and then but one car a day will be run upon a regular schedule, passing a given point at intervals of one hour.

The uncertain and spasmodic running of this railway, in our opinion, requires at least as careful supervision on the part of the borough in the interests of the public, as if it were continually and regularly operated.

The defendant company made regular examination and inspection of its cars, tracks, poles and wires.

The liability of the defendant company to keep the streets through which their tracks run in proper condition was looked after by the highway committee of the council.

It does not appear that the borough authorities made any regular inspection tour of the cars of the company. In fact, they made no such inspection. It does appear, however, and we so find—that the cars of the company stop at the Eagle Hotel in the borough as a kind of station. That during the year for which this license fee is charged they also stopped at times at the two different railroad stations in the town, and this, on big days, caused or helped to cause a blocking of the crowd and vehicles at these places, requiring the employment by the borough of extra police for the supervision and control of the same and the safe and proper handling of the cars of said company.

The evidence in this case might not justify us in finding that from June 1, 1904, to June 1, 1905, the borough of Gettysburg actually expended the sum of $151 in the inspection and supervision of the cars, tracks, etc., of this company, but we are clearly of the opinion that such an amount might reasonably and fairly be expended, in such a careful and thorough inspection and supervision of this railway, as it is the duty of the borough of Gettysburg to exercise for the safety of its citizens and the public.

We refuse to find that the ordinance of June 2, 1895, modified as it has been by the action of council, to an annual fee of $50.00 for each of three cars and an additional $1.00 per day for one car used in excess of three (when but $1.00 for an entire year is charged for an additional car) is an unreasonable ordinance.

Some informalities in reference to the action of council were referred to on the argument, but we understand none of them are now proved, and that the question of the reasonableness of the ordinance as modified and now only sought to be enforced, is now before us.

### DISCUSSIONS AND CONCLUSIONS OF LAW.

It is admitted that the borough ordinance imposing a license fee on the cars of the defendant company, such as is involved in this suit, would be void as a mere revenue measure, and can be sustained only as an exercise of the police power which is inherent in all municipalities.

But "certainly if a municipal regulation is adopted which would be lawful if intended for one purpose and unlawful if intended for another, the presumption is that the purpose was lawful, unless the contrary clearly appears: Johnson v. Philadelphia, 60 Pa. 445. And the employment of special police at certain times by the borough to control the crowd and supervise the running of the defendant's cars is an affirmance of this presumption.

There being nothing in the testimony before us to justify a removal of this presumption, the ordinance in question must be treated as intended and passed by the borough authorities in the exercise of their police powers.

It is also admitted that the exercise of this police power by the borough to be valid, must impose only a reasonable fee for police inspection and supervision.

But the unreasonableness of the fee necessary to make void an ordinance so enacted, must be so clearly apparent as to demonstrate an abuse of discretion on the part of the municipal authorities. The amount of the license fee rests in the first instance with the borough, and it is only where discretion is abused that the courts are justified in interfering: North Braddock Borough v. Traction Co., 8 Pa. Superior Ct. 233; New Hope Borough v. Western Union Telegraph Co., 16 Pa. Superior Ct. 306; Kittanning Electric Light, Heat and Power Co. v. Kittanning Boro., 11 Pa. Superior Ct. 31.

The elements which enter into the question of the reason-

ableness of the fee are the necessary or probable expenses incident to the issuing of the license and the probable expense of proper inspection, regulation and police surveillance. The measure of the reasonableness of the charge is not the amount annually expended by the borough in a particular year: Taylor Boro. v. Postal Tel. & Cable Co., 16 Pa. Superior Ct. 344.

If it were possible to know in advance the exact cost of a proper supervision of the defendant company, that would constitute the proper limit of the fee, but in the nature of things that is impossible and "so the municipality is at liberty to make the charge large enough to carry any reasonable anticipated expense. It is authorized to fix such charge in advance and need not wait until the end of the period for which the license is granted. It may not act arbitrarily or unreasonably, but the risk may rightfully be cast upon the licensee, and the charge cannot be avoided because it subsequently appears that it was somewhat in excess of the actual expense of the supervision:" Schellsburg v. W. U. Tel. Co., 26 Pa. Superior Ct. 343.

The decision of the supreme court of the United States, in Postal Telegraph Cable Co. v. New Hope Borough, decided in 1904, in which the judgment of the Supreme Court of this state affirming the judgment of our Superior Court, which had affirmed the common pleas in giving judgment for want of sufficient affidavit of defense, was reversed; as well as the case of the United Telephone, etc., Co. v. Borough of Carlisle, 31 Pa. C. C. Rep. 481, and other cases decided by our Superior Court in reference to companies engaged in interstate commerce, since the above decision by the supreme court of the United States—we feel are not controlling as to the case in hand, because the defendant company is a purely local company, incorporated under the laws of Pennsylvania, is doing a purely local business, and is not engaged in interstate commerce in any way.

Where a federal question is involved the decision of the supreme court of the United States must undoubtedly control, but upon all questions of purely state law, the decisions of the Supreme Court of Pennsylvania are alone of binding

authority: Kittanning Boro. v. Nat. Gas Co., 26 Pa. Superior Ct. 355; W. Conshohocken Boro. v. L. & P. Co., 29 Pa. Superior Ct. 7.

Finding as we do, that the ordinance in question, by virtue of which the fees in dispute are sought to be recovered in this suit, was passed by the borough of Gettysburg in the exercise of its police power—that it is a reasonable ordinance—and that the defendant company is indebted to the said borough in the sum of $151 for the supervision of its cars under the conditions of said ordinance from June 1, 1904, to June 1, 1905, we hereby direct that judgment be entered in favor of the plaintiff and against the defendant for the sum of $151, with interest from June 1, 1905.

We cannot agree with the contention of the plaintiff that this license fee could be maintained against the defendant company under the act of April 22, 1889. An electric railway running through the streets of a borough and adjoining districts, is clearly not within the intendment of that act.

*Errors assigned* were in dismissing exceptions to findings and conclusion of the court.

*D. P. McPherson* and *Wm. McClean,* for appellant.—The decision of the court must state separately and distinctly the facts found, the answers to points and the conclusions of law: Foreman v. Hosler, 94 Pa. 418; Com. v. Beneficial Assn., 137 Pa. 412; Lewars v. Weaver, 121 Pa. 268.

The ordinance was unreasonable: Lower Merion Twp. v. Tel. Cable Co., 25 Pa. Superior Ct. 306; Norwood Boro. v. W. U. Teleg. Co., 25 Pa. Superior Ct. 406; Schellsburg v. W. U. Teleg. Co., 26 Pa. Superior Ct. 343; Shenandoah Boro. v. Schuylkill Traction Co., 12 Pa. Dist. Rep. 154.

The amount of the fee imposed must be limited to the amount of the expenses that the borough might reasonably and fairly incur for such inspection, regulating and police surveillance as the borough may lawfully give: Schellsburg v. W. U. Tel. Co., 26 Pa. Superior Ct. 343; Erie City v. Erie Elec. Motor Co., 24 Pa. Superior Ct. 77; Allentown v. W. U. Tel. Co., 148 Pa. 117.

The money spent by the borough in the repairing of the streets on which the lines of the defendant company are now located, is not a proper element in determining the reasonableness of the license fee imposed by the borough. Such repairing is a duty on the part of the borough which does not pertain to the exercise of its police power: Secs. 2 and 4 of Act of assembly approved April 3, 1851, P. L. 320, entitled "An Act regulating boroughs:" McLaughlin v. City of Corry, 77 Pa. 109; Allentown v. Kramer, 73 Pa. 406; Dean v. New Milford Twp., 5 W. & S. 545.

*W. C. Sheely,* with him *R. E. Wible,* for appellee.—We respectfully urge that the findings of fact in the present case fully meet every requirement of the act of assembly and fully comply with the requirements of the decisions of the appellate courts: Krauskopf v. Yarn Finishing Co., 26 Pa. Superior Ct. 506; Ellis v. Lane, 85 Pa. 265; Com. v. Monongahela Co., 216 Pa. 108.

The decisions cited by the appellant and relied upon by it on the question of the unreasonableness of the license fee in this case are without exception cases of license fees for the poles of telegraph or telephone companies and are governed by the decisions of the supreme court of the United States in the cases: Postal Telegraph Cable Co. v. Taylor Borough, 192 U. S. 54; Postal Telegraph Cable Co. v. Borough of New Hope, 192 U. S. 64.

Those cases are not controlling in the case at bar and in this case we are bound only by the decisions of the Supreme and Superior Courts of this state: Collingdale Borough v. Tel. & Tel. Co., 33 Pa. Superior Ct. 351; West Conshohocken Borough v. Electric Light, etc., Co., 29 Pa. Superior Ct. 7; Kittanning Boro. v. Nat. Gas Co., 26 Pa. Superior Ct. 355.

The question of the reasonableness of the license is entirely for the court. It is not a question of fact to be passed upon by the jury: New Hope Boro. v. Tel. Co., 16 Pa. Superior Ct. 306; Kneedler v. Borough of Norristown, 100 Pa. 368; Allentown v. W. U. Telegraph Co., 148 Pa. 117; North Braddock Borough v. Traction Co., 8 Pa. Superior Ct. 233.

The fact that the original ordinance granting this railroad company permission to enter the town had no reference to license fees and no reservation of the right to impose them is utterly irrelevant and immaterial: Light, Heat and Power Co. v. Kittanning Boro., 11 Pa. Superior Ct. 31; McKeesport v. Pass. Ry. Co., 2 Pa. Superior Ct. 242; Frankford, etc., Ry. Co. v. Philadelphia, 58 Pa. 119.

The burden of proving the license fee in this case to be unreasonable was upon appellant: West Conshohocken Borough v. Electric Light, etc., Co., 29 Pa. Superior Ct. 7.

OPINION BY RICE, P. J., July 15, 1908:

Section 2 of the Act of April 22, 1874, P. L. 109, provides that "the decision of the court shall be in writing, stating separately and distinctly the facts found, the answers to any points submitted in writing by counsel and the conclusions of law." Failure to conform substantially to these requirements, if assigned for error, is ground for reversal. But we are unable to agree with appellant's counsel that they were not observed by the learned trial judge in the present case. It is not clear that the points were not virtually answered in the court's general findings and conclusions. See Commonwealth v. Monongahela Bridge Company, 216 Pa. 108. But be that as it may, the court cured the irregularity, if any, by answering then specifically when the objection was raised by the exceptions first filed, and giving opportunity to file exceptions to its answers. The findings of fact, while not numbered, are stated in separate paragraphs, and with sufficient regard to formality. Then, after discussion of legal principles applicable to the case, and citation of pertinent authorities, the court set forth in a distinct paragraph, and in such form that it could not be misunderstood, a conclusion of law, which, if correct, would sustain a judgment in the plaintiff's favor for the amount therein directed. The fact that a judge's discussion of the pertinent legal principles and authorities does not follow, but precedes, his statement of the final conclusion or conclusions of law is not ground for valid objection to the form of the decision.

It is argued that the ordinance is invalid because there is no

allusion therein to police inspection or regulation. But the learned judge properly held that this is not ground for holding that it was adopted for revenue purposes and not as a police measure. The regulation of matters affecting the public through the medium of a license fee, or, as sometimes called, a license tax, is a recognized exercise of the police power, and it is settled by decisions relating directly to such ordinances as that now under consideration that if a municipal regulation is adopted, which would be lawful if intended for one purpose and unlawful if intended for another, the presumption is that the purpose was lawful, unless the contrary clearly appears: Johnson v. Philadelphia, 60 Pa. 445; Oil City v. Oil City Trust Co., 151 Pa. 454; Lansdowne Borough v. Springfield Water Co., 16 Pa. Superior Ct. 490.

It is contended further that the burden of proving the reasonableness of the ordinance, and particularly the reasonableness of the license fee, was on the plaintiff. But the exact contrary has been held in numerous cases. The rule that should govern the exercise of the power to revise the action of municipal authorities, conferred upon the courts by the Act of April 17, 1905, P. L. 183, need not be considered in this case. But in an action, such as this is, to recover a license fee, the rule is definitely settled by the decisions that the courts will not declare the ordinance void because of the alleged unreasonableness of the fee charged, unless the unreasonableness be so clearly apparent as to demonstrate an abuse of discretion on the part of the municipal authorities.

Considerable stress is laid by defendant's counsel on the fact that the borough through its officers and agents did not inspect the cars of the defendant company. But it is to be borne in mind that the annual license fee for which the action was brought is not a property tax, and that the police purpose for which it was imposed, presumably, included more than a mere periodic inspection of the cars. Such fee has been spoken of as a specific charge to meet the entire expense of the duty of regulation, inspection and supervision cast upon the municipality with respect to the manner in which the company is exercising its privilege: Kittanning Borough v. Consolidated

Natural Gas Co., 219 Pa. 250; Pottsville Borough v. Pottsville Gas Co., 33 Pa. Superior Ct. 480. It is to be borne in mind, further, that while evidence as to the action of the borough during the year for which the license fee in suit was demanded was admissible for some purposes, yet the fact that the borough neglected some part of its supervisory duty during the year is not, standing alone, a bar to an action to recover a reasonable license fee for a particular year which was due and collectible at the beginning of the year: West Conshohocken Borough v. Conshohocken Electric Light & Power Co., 29 Pa. Superior Ct. 7.

The defendant offered to show that throughout the year for which the license fee of $50.00 a year for each of three cars, and $1.00 a day for each additional car, was demanded in this action, there was another ordinance in force whereby electric railway companies, and other companies having poles carrying overhead wires, were required to pay to the borough "as a license fee for the inspection of the same and for the ground occupied by the poles an annual sum of fifty cents for each pole." We are not satisfied with the reason assigned by counsel for objecting to this offer. They say that it was irrelevant to the question before the court, which was the reasonableness of the "license tax for the cars of the company." But the proper determination of that question depended upon the question whether the charge was imposed for mere inspection of the cars, or was intended to meet the entire expense of the duty of regulation, inspection and supervision cast upon the borough with respect to the manner in which the company is exercising its privileges. It was upon the latter theory that the learned court proceeded in arriving at the conclusion that the amount of the charge "might reasonably and fairly be expended, in such a careful and thorough inspection and supervision of this railway as it is the duty of the borough of Gettysburg to exercise for the safety of its citizens and the public." From this and other portions of the learned judge's findings and conclusions it is fairly to be inferred, that in determining the reasonableness of the fee he took into consideration the expense to the borough incident to proper inspection and super-

vision of the poles as well as of the other parts of the railway. But a license fee which might be reasonable, if intended to cover the probable expense incident to proper police supervision and inspection of the railway and its operation as a whole, might be excessive and unreasonable when considered in connection with the fact that under another ordinance an additional license fee is exacted for the inspection and supervision of a part of the railway, as, for example, the poles and wires. We are of opinion that the evidence should be admitted, and, unless its bearing on the case is explained away in some manner not now appearing, that it should be considered in determining the reasonableness of the license fee in suit.

The remaining inquiry that we deem necessary to notice particularly is as to the admissibility of evidence to the effect, that in consequence of the occupation of the streets by the railway tracks, and of the kind of rails used, the great burden of travel is cast upon the sides of the streets, and this increases the cost to the borough of repairing and maintaining them. The question stated broadly is, whether the probable additional cost to the borough of maintaining and keeping in repair the portions, outside the tracks, of the streets on which an electric railway is lawfully operated, under municipal consent, may be included in the license fee imposed by the municipality in the exercise of its police power. In the numerous cases in which the limits of the power of municipalities in this regard have been considered, it has been generally held that the elements which enter into the charge are the necessary or probable expense of such inspection, regulation and police surveillance as municipalities may lawfully give to the erection and maintenance of the appliances which individuals and corporations may acquire the right to introduce and maintain, upon and under the surface of the public highways: Pottsville Borough v. Pottsville Gas Co., 33 Pa. Superior Ct. 480 and cases there cited. It appears in the present case that municipal consent was given to the defendant company upon certain conditions,—inter alia, to keep in repair the portion of the street between the rails and a certain space on either side. The court properly held that for failure to comply with these conditions the remedy of the bor-

ough was upon its contract. It seems equally clear that a direct attempt to impose on the defendant the duty of repairing the street outside the limits covered by those conditions could not succeed, and if the municipality could not do that directly, except by making it a condition upon which its consent was given, it is impossible to see how it could do it indirectly by making the annual license fee sufficiently large to cover the probable cost of such repair. This would introduce an element into such charge which has not heretofore been recognized as entering into it—an element, too, which it is not necessary to introduce in order to indemnify the borough against loss by reason of its expenditure in the exercise of the police power, upon which, alone, ordinances imposing such charges are sustained. The learned judge admitted the kind of evidence we are now considering with evident hesitation, and at the same time said that he would pass later upon the question whether it should be considered by the court on the question of the reasonableness or unreasonableness of the ordinance. It does not clearly appear in his findings and conclusions that he did consider it; indeed, there is some ground for inferring that he did not. But, on the other hand, he does not expressly say that he wholly excluded it from consideration. To say the least, there is not absolute certainty with regard to the matter. The uncertainty is to some extent increased by the fact that the admission of the testimony was the subject of two of the exceptions to the decision of the court and that in entering final judgment no allusion was made to them. Under the circumstances we feel constrained to sustain the fourth, fifth, sixth and seventh assignments of error.

The judgment is reversed and a new trial awarded.