# Appeal of the Borough of Verona.

1. The various Acts of Assembly constituting the charter of the borough of Verona, and certain ordinances of said borough relating to new streets, considered.

2. The town council of the borough of Verona had power by the charter to determine the location of streets in the borough, and to make a plan thereof, which should be deposited in a public office. The charter provided that all ordinances of the borough should be recorded in another public office. A general plan for the location of streets was adopted by a resolution of the town council on September 11th, 1872, but the resolution was not recorded. Subsequently, in 1873, an Act of Assembly was passed authorizing said town council of Verona to open by ordinance any street "included in the general plan of said borough

approved by councils September 11th, 1872," provided, "that damages which might be assessed to any person through whose property any street is opened . . . . . shall be paid within one year; . . . . . and in default of the payment thereof the said general plan . . . . . and . . . . . said street or streets . . . . . shall be vacated and declared to be abandoned," and the ordinances authorizing the same should be null and void. Town council subsequently passed an ordinance locating a new street according to said general plan, and instructing the street commissioner to cause said street to be opened "immediately after this ordinance goes into effect." No damages having been assessed or paid to A., an owner of property through which the street ran, he filed a bill to restrain the opening thereof.

*Held* (1), that the original resolution of council approving the general plan was void, because not recorded as required by law.

(2.) That the subsequent Act of 1873 validated said general plan.

(3.) That so much of the ordinance which authorized the opening of said street before the assessment and payment of damages to complainant was void.

(4.) That the perpetual injunction granted by the court below be modified so that it should continue only until the ascertainment and payment of damages, if any, caused to plaintiff by the proposed opening.

November 10th, 1884. Before MERCUR, C. J., GORDON, TRUNKEY; STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

CERTIORARI to and appeal from the Court of Common Pleas, No. 1, of *Allegheny county:* In Equity, of October Term, 1884, No. 213.

Bill in equity filed March 15th, 1884, between M. Graver, complainant, and the Borough of Verona defendant. Said bill was substantially as follows:

Complainant alleges ownership of a tract of land in Verona borough, fronting 510.9 feet on Railroad avenue. That said borough has unlawfully entered thereon for the purpose of opening and grading C street in the general plan. That said C street is included in a general plan of streets of said borough, but that said plan was never legally adopted, and even if it was it has become void for the following reasons: That he had no notice of the proceedings to open said street, that proper notice was not given, nor was said general plan kept in the borough for public examination. That at December sessions, 1872, being the next Court of Quarter Sessions after the opening of said streets, application was made for damages for injuries sustained thereby by persons owning property along the line of streets included in said general plan, and damages were allowed them. That said damages have never been paid, although more than a year has elapsed since the confirmation of the report of viewers. By reason of such default the said general plan and the said C street were vacated and abandoned, and the ordinances directing the opening of said street are null and void. That he has received no compensation or

security from said borough for damages he will sustain by reason of such opening and grading.

The bill prayed for a perpetual injunction restraining said borough from proceeding further with the opening and grading of said C street.

The defendant filed an answer admitting that it was opening said street, but setting up its legal right to do so. The cause was referred to Edwin W. Smith, Esq., as Master, from whose report the following facts appeared: The Borough of Verona was incorporated by the Act of May 10th, 1871 (P. L. 705), the 3d section of which provided that the Act of April 8th, 1848 (P. L. 415), incorporating the borough of Birmingham and its various supplements (including the Act of April 28th, 1854), should also apply to Verona. The said Act of 1848 provided as follows:

"Section 1st. That the town council of the borough of Birmingham, in the county of Allegheny, when they shall consider that the opening of any new street, lane or alley within said borough . . . . . is necessary for the use and convenience of the public, shall have power and they are hereby authorized thereupon to direct and determine the location and limits of such street, lane or alley ; . . . . . and a plan or specification of such location or determination of increase of width shall be made and deposited in the office of the recording regulator of said borough for public examination and inspection, whereof notice shall be given in at least two newspapers published in the county of Allegheny; and any owner or owners of ground lying on the line of such street, lane or alley, who shall consider that he, she or they shall suffer damage from the opening or widening of the same, may apply by petition to the next Court of Quarter Sessions of the county of Allegheny, by whom such orders and appointments shall be made ; and the same proceedings in every respect shall be had for the view, appraisement of damages, the report thereof, and confirmation of the same, as are directed by the provisions of the general road laws of this commonwealth; and the said council, so soon as they shall have caused payment of damages assessed to be made to the persons entitled to receive the same, according to the report of the viewers, returned to said court, and confirmed by the same, may proceed to cause such street, lane or alley to be opened forthwith; and the same shall forever thereafter be taken and allowed to be a public highway ; . . . . . provided, nevertheless, that if the damages ascertained in the manner aforesaid shall not have been paid within one year from the time of the confirmation of the report of the same, then the proceeding had in pursuance of the provision of this section shall be held thereafter null and void."

The Act of 1854 provided that "all ordinances of the said borough (Birmingham) now in force or hereafter enacted shall be recorded in a book or books to be kept at the office of the burgess, which shall be free to public inspection, and no ordinance hereafter to be passed by the town council of said borough shall be carried into operation in less than two weeks after the same shall be recorded."

During the summer of 1872 a plan of streets covering the Second ward of Verona, and including C street, was made by the borough recording regulator, under instructions from the town clerk. This plan was submitted to councils for approval, and their minutes of September 11th, 1872, in reference thereto, showed the following: "Motion of Isaac Morley, seconded by J. J. Lawrence, to approve and adopt the plan of streets as amended, as a whole—carried." This motion or resolution was not recorded in the burgess's office.

The plan was marked "Approved and adopted by councils, September 11th, 1872;" the burgess wrote his name across it, and the attestation of the clerk was added. It was then deposited in the office of the recording regulator of the borough, and notice given in two newspapers as required. The recording regulator's office was in Pittsburgh, however, and the plan remained there until the election of his successor in 1877, when it was lost. But a copy of the same was in evidence. Many people examined the plan, and among them James Mazurie, from whose heirs complainant purchased his property. A number of property owners claimed damages at the next term of Quarter Sessions, which were duly assessed to them but remained unpaid.

On April 21st, 1873, the following Act of Legislature was passed:

"That the burgess and town council of the borough of Verona are hereby authorized to open any part or parts of any street included in the general plan of said borough, approved by council September 11th, 1872, and they are hereby authorized and empowered to pass such ordinances or resolutions as may be necessary to carry this Act into effect; *provided*, that nothing herein contained shall affect or impair the rights of any person who has applied for damages sustained by reason of the adoption of said general plan; *and provided, further*, that in all cases where damages have been assessed in favor of any property owner or owners, or where any application for the assessment of damages has been made by any person or persons, through whose property any street is or has been laid out or opened, under said general plan or any other plan, by virtue of any borough ordinance or ordinances, the said damages so assessed, or to be assessed, shall be paid by said borough,

or by whomsoever may be required to pay the same, within one year from the filing of the report of viewers appointed to assess said damages; and in default of the payment thereof, the said general plan, or other plan, and do said street or streets, or parts thereof, shall be and are hereby vacated and declared to be abandoned, and said ordinance or ordinances shall be null and void."

On September 29th, 1873, the councils, by an ordinance, enacted " That C street is hereby located from the Allegheny river to the eastern side of the borough, according to the plan in the recording regulator's office. Section second, that the street commissioner be and is hereby instructed to cause the said street to be opened from the Allegheny river to the eastern side of the borough immediately after this ordinance goes into effect, and that the said street be taken and allowed to be a public highway for the same use and purpose as the other streets, lanes and alleys of said borough."

Printed copies of this ordinance were posted through the borough, and it was recorded in the. borough ordinance, book. Sometime after the date of this ordinance, C street was opened from Railroad avenue to the river. In February, 1883, complainant bought from the heirs of James Mazurie the ground covered by C street, but did not know of the existence of any plan covering this property, or of the location of C street. About September, 1883, the borough authorities proceeded to tear down the fences across and remove the trees from the line of· C street, as located in the general plan, with the purpose of opening this street. In March of the next year some other work was being done, when the complainant filed his bill to restrain.

The Master reported against the legality of the adoption by borough councils of the general plan of 1872, substantially on the ground that the resolution or motion purporting to adopt it was not properly recorded under the Act of 1854.

As to the effect of the Act of April 21st, 1873, the Master reported as follows: " The minutes of September 11th, 1872, show that the plan was taken ' as a whole.' There is no doubt that up to the passage of the Act of 1873, the plan was considered as an entirety. . . . . . The Act was passed while the claims allowed at ·December Sessions were still unpaid, and saves to these claimants all their rights. It provides that damages 'shall be paid by said borough or by whomsoever may be required to pay the same within one year from the filing of the report of viewers appointed to assess said damages , and in default of the payment thereof, the said general or other plan and do said street or streets or parts thereof, shall be and are hereby vacated and declared to be abandoned.'

If, then, the Act itself could possibly be considered a re-location, it is a re-location of the plan as a whole, and is a re-location subject to the payment of damages allowed to those claiming at December Sessions. These claims were not paid, and according to the terms of the Act the said general plan shall be and is thereby vacated and declared to be abandoned. If the Act is not retroactive, if it is not in itself a re-location, we have the legislature giving the borough councils authority to do what they could have done without the Act, that is, to pass such ordinances or resolutions as may be necessary to open the streets included in the general plan.

The Act of 1848 requires a location of a street by ordinance or resolution, a deposit of a plan in the recording regulator's office for public inspection, an advertisement in two news-papers, an opportunity for property owners to apply at the " next term " of the Quarter Sessions Court, and the payment of all damages assessed, before the borough can open the street. The Act of 1873 does not lessen the number of these requisites. Although the Act of 1873 was offered in evidence by the counsel for complainant the counsel for respondent relies upon it greatly. He has offered in evidence, to show a compliance with its terms, an ordinance of councils, approved September 29th, 1873, which enacts: ' That C street is hereby located from the Allegheny river to the eastern side of the borough, according to the plan in the recording regulator's office. Sec-tion 2d, that the street commissioner be and is hereby in-structed to cause the said street to be opened from the Alle-gheny river to the eastern side of the borough, immediately after this ordinance goes into effect, and that the said street be taken, and be allowed to be a public highway, for the same use and purpose as the other streets, lanes and alleys of said borough.' This was objected to because no evidence has been introduced showing that C street was laid out, and that it is of itself incompetent. With the rejection of the general plan this ordinance itself becomes dependent. Before it will authorize the opening of C street it must show a compliance with all the requirements of the Act of 1848. While it recites that C street ' is hereby located,' that seems to be merely a formal promise, the ordinance being entitled ' an ordinance for the opening of C street.' If the words ' according to the plan in the regulator's office,' with the fact that the general plan was at the time in the regulator's office, would do away with the necessity of depositing a new plan in the recording regu-lator's office, still a re-advertisement would be necessary to notify the citizens under the Act. The ordinance allows no time nor opportunity to apply ' at the next term ' of the Quar-ter Sessions, for the street commissioner is instructed to cause

the said street to be opened 'immediately after the ordinance goes into effect.' The Master rules against the admission of the ordinance for the reasons given, . . . . . and concludes that complainant is entitled to have the prayer of his bill granted."

Exceptions filed to this report were overruled by the court and the following decree entered:

" And now, to wit, October 11th, 1884, this case came on to be heard upon the pleadings and upon the testimony, and after the consideration thereof, it is ordered, adjudged and decreed, that the prayer of complainant is granted that a perpetual injunction be issued restraining and enjoining the said borough, its officers and agents from further proceeding in the opening and grading of said C street through the property of M. Graver. That the ordinances and other proceedings authorizing and directing said street to be opened over M. Graver's land are null and void."

Whereupon the defendant took this writ, assigning for error the said decree.

*J. P. Hunter & A. M. Brown*, for appellant.

*George P. Graver* (with whom was *D. T. Watson*), for appellee.

Mr. Justice TRUNKEY delivered the opinion of the court, January 5th, 1885.

The Act of April 28th, 1854, P. L. 513, is part of the charter of the borough of Verona. It provides that all ordinances " shall be recorded in a book to be kept at the office of the burgess, which shall be free to public inspection, and no ordinance . . . . . shall be carried into operation in less than two weeks after the same shall be so recorded." Such provision calls for no discussion whether it is mandatory or directory, for it plainly expresses the condition upon the performance of which, after two weeks, the ordinance shall be carried into operation, and no ingenuity can make the ordinance operative before. That Act was originally applied to the borough of Birmingham, and contained a directory provision that all ordinances then in force should be recorded in said book. The distinction is obvious between the ordinances passed before the date of the Act and those to be passed thereafter.

By the Act of April 8th, 1848, P. L. 415, also a part of the charter, the town council are empowered to direct and determine the location and limits of any new street, lane or alley, when they shall consider that the opening of the same is necessary ; and a plan of such location shall be made and deposited in

the office of the recording regulator of said borough, whereof notice shall be published in at least two newspapers of Allegheny county; and any owner or owners of ground lying on the line of such street, lane or alley, may institute proceedings for recovery of damages in the manner provided by the general road laws.

When the Act of 1848 was passed, the town council of the borough of Birmingham had authority to enact by-laws, rules, ordinances and regulations, but no by-law or ordinance should be carried into operation in less than three weeks after publication by setting up a true copy thereof in three of the most public places in said borough: Act of April 10th, 1826, P. L. 376, § 11. How the location and opening of a new street could be directed and determined without an ordinance, by the town council, has not been shown. Its form may not be material; if as a motion or resolution, when legally adopted it has the effect of and virtually is an ordinance. Conferring the additional power on the council to direct and determine the location of a new street, that is to ordain that there shall be a new street on a certain location, dispensed with no requisite to the operation of an ordinance, prescribed by a prior statute. Upon the superseding of that requisite by the new one prescribed by the Act of 1854, the latter became an essential for an operative ordinance. Then, if it be conceded that the council had power to adopt the plan, the motion, resolution or ordinance for adopting it, was not recorded as provided by law.

The Act of April 21st, 1873, P. L. 824, provides, "That the burgess and town council of the borough of Verona are hereby authorized to open any part or parts of any street included in the general plan of said borough, approved by council, September eleventh, one thousand eight hundred and seventy-two, and they are hereby authorized and empowered to pass such ordinances or resolutions as may be necessary to carry this Act into effect." Then follow provisions respecting damages, which need little remark in the pending case. It has not been denied that the legislature had power to validate a plan of streets for the borough. The Act authorizes the passing of all ordinances that may be necessary for opening any part or parts of any street included in a described plan. On its face appears no intent that it shall operate retrospectively; it recognizes the plan and confers so large powers with reference thereto that practically it is made the general plan of the borough. Without surmise as to the words which should be read in the place of "and do," it is clear that it is not the intendment that the plan and all ordinances for opening streets shall be void in default of payment of damages, as required, which

may result from the opening of a part or the whole of any particular street. The street or part of the street shall be vacated, and the ordinance for opening thereof shall be void, and the plan as to said street or part shall be abandoned, in default of payment of damages within the time named; but streets and plan thereof, and the ordinances for opening the same, where the damages shall have been released or duly paid, remain.

There having been no operative ordinance approving the plan, a person who examined it prior to the Act of 1873, and after the adoption of the resolution of approval, was not bound to apply for damages under pain of losing his right. At present there is no question concerning those who did apply. Nor is it necessary to consider whether owners of land on the lines of the streets, lanes and alleys included in said plan, would have lost their right to recover damages by suffering the term of court to pass without application, had the ordinance, merely approving the plan, been recorded.

The Acts of 1848 and 1873 are to be construed as one. Therefore, on the passing of an ordinance for opening any part or parts of any street included in said plan, the prescribed notice shall be given, and the owner or owners of ground on the line of said part or parts of the street may apply for damages by petition to the next term of the court of quarter sessions. It was contemplated by the Act of 1873 that there would be no immediate necessity for opening all the streets included in the plan, and power was conferred to pass an ordinance for opening part or parts of any street. In case of an ordinance providing for the opening, where the owner of land on the line of the street, or part thereof to be opened, had not already proceeded for settlement of damages, or had not done some act that would bar his recovery, he is entitled to notice of the ordinance and may demand damages in the mode provided by the statute. By the terms of the Act of 1848, the " council, so soon as they shall have caused payment of the damages assessed to be made to the persons entitled to receive the same, according to the report of the viewers, returned to said court and confirmed by the same, may proceed to cause such street, lane or alley to be opened forthwith." Moreover, since January, 1874, a municipal corporation, invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by the construction of highways, which compensation shall be paid or secured before such taking, injury or destruction.

There is no evidence that Mazurie did any act to bar his right to damages, nor that such action had been taken by the

borough officers while he owned the land, as vested the damages in him occasioned by the ordinance for opening the street. The Act erecting the town of Verona into a borough vests the power to enact ordinances in the town council, the burgess cannot veto, and he is not directed to sign ordinances.   Ordinances authorized by the Act of 1873, we think, may be passed in the usual mode, by the council.   After the enactment the duty of the burgess begins.   We are not convinced that the ordinance, approved September 27th, 1873, was without the powers of the council, except so much as directs the street commissioner to immediately open the street.   That act could not be lawfully done, until after payment of the damages, if any, to the owner of the land taken for the street.

Decree affirmed, but modified so that the injunction instead of being perpetual, shall continue until the damages, if any, that shall be done to the property of the said M. Graver by the opening and grading of C street, shall be ascertained, determined and paid.   And the second sentence be stricken out, and instead thereof, the following: That so much of the ordinance as directs said street to be opened over M. Graver's land before the determination and payment of his damages, is void. The costs to be paid by appellant.