# Pittsburg *v.* Consolidated Gas Company of Pittsburg, Appellant.

*Municipalities—Police power—Subsurface of street—Water pipes—Gas company—Public health.*

Except as restricted by the act under which a public service company derives its powers, the police power of a borough or city extends to such occupancy and use of streets, whether upon or beneath the surface, as in its nature requires, or justifies supervision at the hands of the municipality in order to safeguard the public in their rightful

use of the same streets as those that are occupied by the public surface company.

Whatever right a gas company acquires in a public street is subject, in so far as the location of its pipes in any particular part of a street is concerned, to such future regulation as may be required in the interest of the public health and public welfare.

Where a city finds it necessary, in the interest of the public health, to lay a water main in a street in the location occupied by the gas pipe of a gas company, it may remove the gas pipe to another part of the street, and the gas company has no right to object to such removal or to demand damages or compensation on account thereof.

The exercise of such a power by the city is referable to, and sustainable by, its police power; and the constitutional provision relative to compensation for property taken, injured or destroyed in the exercise of the power of eminent domain, has no application.

Argued May 8, 1907.    Appeal, No. 215, April T., 1907, by defendant, from decree of C. P. No. 3, Allegheny Co., Nov. Term, 1905, No. 186, on bill in equity in case of City of Pittsburg v. Consolidated Gas Company of the City of Pittsburg. Before RICE, P. J., HENDERSON, ORLADY, HEAD and BEAVER, JJ.    Affirmed.

Bill in equity for an injunction.

EVANS, J., filed the following opinion:

#### FINDINGS OF FACT.

1. The city of Pittsburg maintains a system of water works for the supply of water to the inhabitants of the city and for the purposes of the general public, by virtue of various acts of assemby, as follows: An Act approved March 7, 1843, P. L. 46; Act approved April 6, 1867, P. L. 846, sec. 10; Act of March 15, 1871, P. L. 368; and the charter Act of March. 7, 1901, P. L. 20, art. XIX, sec. 3, cl. XXXIX of which reads as follows:

" To have the exclusive right, at all times, to supply the city with water, and such persons, partnerships and corporations therein as may desire the same, at such price as may be agreed upon, and for the purpose to have, at all times, the unrestricted right to make, erect and maintain all proper works, machinery, buildings, cisterns, reservoirs, pipes and conduits

for the raising, reception, conveyance and distribution of water ; or, in territory not supplied with water, to make contracts with and authorize any person, company or association so to do, and to give such person, company or association the privilege of furnishing water, as aforesaid, for any length of time, not exceeding ten years."

2. On the ——— day of ——————, 190—, the councils of the city of Pittsburg passed an ordinance authorizing the letting of a contract for a pipe line and appurtenances from Highland reservoir No. 2 to the south side, for the purpose of supplying filtered water to the south side of the city of Pittsburg ; and in pursuance of that ordinance a contract was duly let and the work was in progress at the time of the filing of this bill.

3. In the laying of the said water main from Highland reservoir to the south side, the pipes of the defendant company were encountered on Ellsworth avenue, at the corner of Graham street, and it became necessary to remove them from their location in order to lay the water main of the plaintiff from the intersection of Ellsworth avenue and Graham street to Colonial place, a distance of 1,600 feet.

4. The councils of the city of Pittsburg, on October 14, 1872, adopted the following ordinance (Thompson's Digest, page 474) :

"Hereafter when it shall become necessary to take up any railroad track, gas pipes or private sewers, for the purpose of grading, re-grading, paving, or re-paving of any streets, lanes or alleys in the City of Pittsburg, for the construction or repair of any sewer or other public improvement therein, it shall be the duty of the owner of such track, pipe, or sewer, upon written notice from the city engineer, street commissioner, or other parties having charge of the work, to take up such track, pipe or sewer, within such time as shall be specified in such notice, and to relay the same in such time and manner as may be designated in the same or subsequent notice."

The pipe of the defendant company was laid on that part of Ellsworth avenue in dispute in this case some time prior to the passage of the aforesaid ordinance.

5. The pipes in dispute were laid by the East End Gas Company, a corporation organized by Act of assembly of April 5,

1869, P. L. 711.   The defendant, the Consolidated Gas Company, was chartered by special Act of assembly, approved May 19, 1871, P. L. (1872) 1309, and purchased the property, rights and franchises of the East End Gas Company; and the said company owns, maintains and operates a line of pipe for the purpose of furnishing gas in and along Ellsworth avenue, between Graham street and Colonial place, in said city of Pittsburg, and other points in the said city.

6. There is no ordinance of the city of Pittsburg authorizing the East End Gas Company to lay its pipes under the streets of said city; but the city has recognized the right of the company to have its pipes in the street, by making a contract with the company in reference to the prices for the supply of gas to the city.

7. The defendant company removed and replaced its pipe line in accordance with the decree and preliminary injunction in this case, at a cost of $137.44.

### CONCLUSIONS OF LAW.

1. The East End Gas Company had the right, under its charter, to lay and maintain its gas pipes under the streets of the city of Pittsburg, and the defendant, the Consolidated Gas Company, succeeded to the rights of the East End Gas Company and is now lawfully maintaining its pipes on the part of Ellsworth avenue affected by the question in this case.

2. The duty to furnish the supply of water to the inhabitants of the city of Pittsburg and for public use, is such a public duty as gives it the paramount right to occupy the streets over the rights of any private corporation; and the rights of the defendant are subordinate and must give way whenever they conflict with the right of the city to construct its water mains.

3. That the defendant, the Consolidated Gas Company, pay the costs of removal and replacing of its pipes, and the costs of this proceeding.

It is conceeded by the counsel for the defendant that, if the removal of its pipes were occasioned by the change of the grade of the street, or the construction of a sewer, the defendant company would be compelled to change the location of its pipes wherever their present location interfered with the city

in the prosecution of its work. But it is claimed that the furnishing of water and the laying of pipes incidental thereto is not a governmental function, that the city, in doing the same, is acting as a private corporation.

It may be conceded that the furnishing of water to the inhabitants of the city and for the use of the public is not an inherent right or duty on the part of the city; but when the legislature imposes that duty upon the municipality, as it has done in the case of the city of Pittsburg, it becomes as binding a duty upon the city to furnish healthful water to its inhabitants and a supply of water for public uses, as though it were an essential to the conduct of municipal government. Certainly, the supplying of clean water and healthful water is as necessary to public life as is the taking care of the sewage of the inhabitants of the city, and the legislature has devolved upon the municipality of Pittsburg the duty of conserving the public health by the proper supply of water to its inhabitants.

Let a decree be drawn in accordance with the above findings.

*Error assigned* was decree awarding an injunction.

*Samuel McClay*, with him *Reed, Smith, Shaw & Beal*, for appellant.—The appellee cannot compel the appellant to move, change and replace its gas pipes without compensation, because :

1. The grant by the state to the East End Gas Company, approved by the municipality, to lay its pipes on Ellsworth avenue, constituted a contract when accepted and acted upon by the gas company, that cannot be revoked, modified or impaired by the municipality except with the consent of the gas company, unless the municipality shall do so in the exercise of its governmental function or under the police power.

2. The municipality, in the construction of its water mains on Ellsworth avenue, was not exercising any sovereign or governmental right vested in it, but was acting solely in a business capacity, and possessed no higher right than a private water company incorporated under the statutes of Pennsylvania, and it could not compel the removal of appellant's pipes as prayed without compensation.

See the following cases : City of Pittsburg's App., 115 Pa.

4 ; Walla Walla v. Walla Walla Water Co., 172 U. S. 1 (19 Sup.
Ct. Repr. 77) ; Western Saving Fund Society v. Philadelphia,
31 Pa. 175 ; Wheeler v. Philadelphia, 77 Pa. 338 ; Baily v.
Philadelphia, 184 Pa. 594 ; White v. Meadville City, 177 Pa.
643 ; Jolly v. Monaca Borough, 216 Pa. 345 ; Edison Electric
Light &· Power Co. v. Electric Light, Heat & Power Co., 200
Pa. 209.

*J. R. McCreery,* with him *W. B. Rodgers,* for appellee.—The
city of Pittsburg does not contend that it can arbitrarily, by
the location of its water mains, compel the removal of pipes of
private corporations which were laid in the streets by lawful
authority, but its contention is that when in the furnishing of
water it becomes necessary to change the location of such pipes
the city has the power to require such change and it must be
made at the expense of the private corporation because that is
a regulation for the public good under the police power and is
not taking property without compensation : Chicago, Burling-
ton, etc., R. R. Co. v. Chicago, 166 U. S. 226 (17 Sup. Ct.
Repr. 581) ; Lehigh Water Co.'s App., 102 Pa. 515 ; Allen-
town v. Henry, 73 Pa. 404 ; Scranton Gas & Water Co. v.
Scranton City, 214 Pa. 586 ; Water Commissioners v. Hudson
City, 13 N. J. Eq. 420 ; Chicago, etc., R. R. Co. v. Drainage
Commissioners, 200 U. S. 561 (26 Sup. Ct. Repr. 341) ; Deer-
ing's Petition, 93 N. Y. 361 ; Nat. Water Works Co. of N. Y.
v. Kansas City, 28 Fed. Repr. 921 ; Belfast Water Co. v. Bel-
fast City, 92 Me. 52 (42 Atl. Repr. 235) ; Rockland Water
Co. v. Rockland City, 83 Me. 267 (22 Atl. Repr. 166) ; Gas
Light & Coke Co. v. Columbus, 50 Ohio, 65 (33 N. E. Repr.
292) ; Brunswick Gas Light Co. v. Brunswick Village Cor-
poration, 92 Me. 493 (43 Atl. Repr. 104) ; Middlesex R. R.
Co. v. Wakefield, 103 Mass. 261 ; Portsmouth Gas Light Co.
v. Shanahan, 65 N. H. 233 (19 Atl. Repr. 1002) ; Jamaica
Pond Aqueduct Corporation v. Inhabitants of Brookline, 121
Mass. 5 ; Johnson v. Jaqui, 27 N. J. Eq. 552 ; Roanoke Gas
Co. v. Roanoke, 88 Va. 810 (14 S. E. Repr. 665) ; Southwark
R. R. Co. v. Philadelphia, 47 Pa. 314 ; Wilkes-Barre Gas Co.
v. Hendler, 5 Kulp, 347 ; Monongahela City v. Monongahela
Electric Light Co., 3 Pa. Dist. Rep. 63 ; Ridge Avenue Pass.
Ry. Co. v. Philadelphia, 181 Pa. 592.

OPINION BY RICE, P. J., October 7, 1907:

The nature of the proceedings and the issue out of which this appeal arises and the facts pertinent to the issue have been fully and clearly set forth by the learned judge below, and we shall not attempt to restate them.   The appellant's proposition, that it had a right to maintain its pipe. on Ellsworth avenue in the location in which it was laid, which right could not be abridged nor interfered with by the city, without making or securing due compensation, " except through its sovereign or police powers," is indisputable under the evidence. To be more explicit, the statutes under which it acquired the right do not expressly provide that it shall be held subject to ordinances thereafter to be passed relative to the location, relocation or relaying of such pipe; nor was the pipe laid under consent granted by the city upon such condition.   It is claimed that the right of the city to lay a water main in the same street, while equally clear and incontestable, was not superior, abstractly considered.   This, it is argued, is a logical deduction from the general principles enunciated in Western Saving Fund Society v. Phila., 31 Pa. 175; Baily v. Philadelphia, 184 Pa. 594; White v. Meadville, 177 Pa. 643, at p. 652, and for present purposes it may be conceded.   It results from the foregoing that the city could not compel the gas company to remove its pipe from the location where it was lawfully laid, except in the exercise of the right of eminent domain and upon making and securing due compensation, unless it could vouch some other basis for its demand than its mere will to use the same location for its water main.   But although in the statutes under which the gas company acquired its right there is no express reservation to the state or the city of the power to require the company to change the location of its pipe, it does not necessarily follow that no such power can be exercised by either under any circumstances.   " The right of a private corporation to break up "—and we add, to occupy or use—" the public highways of a municipality in the exercise of a franchise conferred upon them by an act of assembly, is necessarily subject to the reasonable municipal regulations of the district enacted for the common good of all its inhabitants unless specially excluded by the act conferring the right : " Commissioners, etc., of The Northern Liberties v. The Northern Liberties

Gas Company, 12 Pa. 318. A company that is required to obtain municipal consent, and after obtaining it has entered upon the streets, is in precisely the same situation, so far as its being subject to police regulation is concerned, as a company that is not required to obtain consent. The power of the city to make reasonable police regulations is independent of, and not merely incidental to, the power to grant or withhold consent to the use of the streets by the corporation : Lansdowne Borough v. Springfield Water Company, 16 Pa. Superior Ct. 490. " To say that the police power of a city or borough over streets does not extend beneath the surface would be contrary to sound principle, and be justified by no decision to which our attention has been called. Indeed, it would seem to be in plain conflict with the principles enunciated in McDevitt v. People's Nat. Gas Co., 160 Pa. 367, and kindred cases. Except as restricted by the act under which such companies derive their powers, the police power of a borough or city extends to such occupancy and use of the streets, whether upon or beneath the surface, as in its nature requires or justifies supervision at the hands of the municipality in order to safeguard the public in their rightful use of the same streets : " Kittanning Boro. v. Nat. Gas Co., 26 Pa. Superior Ct. 355. The primary use of streets in cities and boroughs is not confined to travel or transportation. As to the uses for which such highways are acquired and to which they are appropriated, we quote from the McDevitt case above cited : " The necessity for drainage ; for a water supply ; for gas for purposes of lighting ; for natural, or fuel gas, for heat ; for subways for telegraph and other wires ; and for other urban necessities or conveniences, gives to the municipality a control over the sub-surface that the township has not. Property in a city is no less sacred than property in the country. The title of the owner is neither better nor worse because of the location of his land. But its situation may subject it to a greater servitude in favor of the public in a large, compactly built city than would be imposed upon it in the open country. The city has the right to use the streets and alleys to whatever depth below the surface it may be desirable to go, for sewers, gas and water mains, and any other urban uses. In taking the streets for these necessary or desirable purposes it

is acting not for its own profit, but for the public good.  It is the representative of the inhabitants of the city, considering their heath, their family comfort, and their business needs ; and every lot owner shares in the benefits which such an appropriation of the streets and alleys confers.  If the city abridges his control over the soil in and under the street, it compensates him by making him a sharer in the public advantages that result from proper drainage, from an abundant water supply, from the general distribution of gas, and the like."  In Scranton Gas & Water Company v. Scranton City, 214 Pa. 586, it was held that where a city changes the grade of a street in order to do away with a railroad grade crossing, and a gas and water company is obliged to move its pipes from the street by reason of the change of grade, the company can recover no damages from the city for the injury sustained.  Justice STEWART, who delivered the opinion of the court, said upon the subject now under consideration:  " Calling the legislative grant of privilege to use the streets a contract does not avoid the conditions on which the privilege is to be exercised.  Whether such limitation or conditions be expressed in the grant or not is immaterial, for, as said in Butchers' Union Slaughter House Co. v. Crescent City Live Stock Landing Co., 111 U. S. 746, the power to control and regulate the streets so as to protect the public health, is one that cannot be bargained away by legislative or municipal grant.  The power to control them for the protection of public safety, if not the same, stands on equally high ground.  All authorities agree that such right is both paramount and inalienable.  Nor is the right limited to the control of a mere surface ; it extends to the soil beneath, to whatever extent it may be required in aid of such purposes as fall within the municipal function, in connection with the health and safety of the public: Water Commissioners of Jersey City v. Hudson City, 13 N. J. Eq. 420."  Then after quoting from Rafferty v. Central Traction Co., 147 Pa. 579, he says : " It is unnecessary to cite other authority to show that no liability results to the municipality, for the disturbance of a gas or water company's pipes in the public streets when made necessary by public consideration."  So in New Orleans Gas Light Company v. Drainage Commission of New Orleans, 197 U. S. 453, in which a judgment of the Supreme Court of Loui-

siana denying the right of a gas company to recover sums paid out for making the changes in the location of its pipes and mains necessitated by the construction of a municipal drainage system was affirmed, Justice DAY, said : " The need of occupation of the soil beneath the streets in cities is constantly increasing for the supply of water and light and the construction of systems of sewerage and drainage, and every reason of public policy requires that grants of rights in such sub-surface shall be held subject to such reasonable regulation as the public health and safety may require." Viewing the case before us in the light of these well-established principles, we think it clear that whatever right the gas company acquired was subject, in so far as the location of its pipes in any particular part of the street was concerned, to such future regulations as might be required in the interests of the public health and public welfare.

We think it equally clear that the occasion justified the exercise of this power, and that the ordinance of 1872 is broad enough in terms to cover the case. The pipe of the gas company could be moved to another part of the street without other loss or damage to the company, so far as the evidence shows, than the cost of removal, which was small. On the other hand, the trial court has found that for a certain distance on Ellsworth avenue it was necessary to lay the water main in the location occupied by the gas pipe. The evidence shows that this location for the water main was not selected arbitrarily, but for practical reasons which amply justified the selection and the finding of the court that it was necessary. The ultimate purpose for which the city determined to use this portion of the sub-surface of the street was not to increase its revenues from the business of supplying water to the inhabitants of the city, but to promote the public health. It was part of a plan which was as directly and obviously calculated to promote that object as the construction of a system of sewerage or drainage. It is a mistake to suppose that its action now under consideration is referable only to its power to supply water to the inhabitants of the city and for public uses. It has that power, and it is exclusive, but it also has the power to make regulations to secure the general health of the inhabitants ; and its action is sustainable as a reasonable exercise of that power

upon proper occasion, whatever may be said of its mere power to supply water.   As was said in Lehigh Water Co.'s Appeal, 102 Pa. 515, a municipal corporation exercising the functions of a private corporation in supplying its citizens with gas or water does not thereby lose its distinctive municipal character. Therefore, the case is not to be treated as if it were a dispute between two private corporations, one acting under the power to supply gas and the other under the power to supply water to the inhabitants of the city, but as a case turning upon the question whether a gas company may be compelled to change the location of its pipe from one part of a street to another part of the same street, where such change is necessary in order to enable the city to execute a plan which is so obviously and directly calculated to promote the public health, as is the city's plan to improve the character of the water supply.   In an .vering that question in the affirmative it is not necessary to decide that a power to supply water, abstractly considered, is higher in grade than a power to supply gas, but only that the gas company held its right to occupy a particular part of the street subject to the superior right of the city to control and regulate the use of the street so as to protect and promote the public health.

The action of the city, to which the defendant objects, being referable to and sustainable by its police power, the constitutional provision relative to compensation for property taken, injured or destroyed in the exercise of the power of eminent domain, has no application.   The defendant cannot claim damages or compensation on account of being compelled to render obedience to a police regulation designed to secure the public health and welfare : Scranton Gas & Water Co. v. Scranton, 214 Pa. 586;  New Orleans Gas Light Co. v. Drainage Commission of New Orleans, 197 U. S. 453 ;  Chicago, Burlington & Q. Ry. Co. v. Chicago, 166 U. S. 226, at p. 255.   Other cases are cited in the appellee's brief in support of this proposition.

The decree is affirmed and the appellant to pay the costs.