## Reading School District v. Consumers' Gas Company.

*Streets—Vacation by city—Rights of abutting owners in land vacated—Gas main in street—Removal—Equity—Injunction.*

1. The Reading School District, desiring to erect a high school building on property owned by it between 12th and 13th Streets in the City of Reading, obtained the vacation of Birch Street between Marion and Perry Streets, which ran through the middle of the property. When excavation started, it was found that an eight-inch gas main of the Consumers' Gas Company ran through that portion of Birch Street and interfered with the construction of the building. The school district requested the gas company to remove the pipes, which it agreed to do, but insisted that the school district pay the expenses of removal. Thereupon the school district filed a bill in equity asking for a prohibitory and a mandatory injunction against the gas company, restraining it from maintaining the obstruction and compelling its removal. At the hearing on the preliminary injunction granted by the court, counsel on both sides stated that there was practically no disagreement between them except on the matter of payment of cost of removal: *Held*, continuing the preliminary injunction, that upon the vacation of the street the adjoining owners took title up to the centre thereof, and as the school district was the abutting owner on both sides, it was entitled to claim the whole of the street, with the right to have it free from any easement, and that it then became the duty of the gas company to remove its gas main at its own expense.

*Public service companies—Laying pipes in city streets—Vacation of street —Removal of pipes.* '

2. A company accepting a franchise that involves a use of the public streets of a municipality must accept it subject to the continuous right of the municipality to perform its strictly legal functions and obligations, even though such performance may entail some expense upon the holder of the franchise in readjusting its pole lines, water and gas pipes, street car tracks and the like to the new situation brought about by the lawful act of the city.

3. Where a gas company lays its main in a city street, it does so subject to the right of the city to change or vacate the street, although such action will require the removal of the main.

Bill for injunction. C. P. Berks Co., Equity Docket, 1922, No. 1321.

*George Eves*, for plaintiff; *Richmond L. Jones*, for defendant.

ENDLICH, P. J., Feb. 20, 1922.—The School District of the City of Reading, being, since Aug. 1, 1906, the owner of the western half of the block bounded by 12th and 13th Streets and Marion and Perry Streets, in the City of Reading, on July 31, 1920, acquired title to the remainder of the block, Birch Street running north and south, parallel to and midway between 12th and 13th Streets, and having been duly opened through this square on April 2, 1907, by action of the Council of the City of Reading. Whilst the public records did not disclose the presence of a gas main on Birch Street between Marion and Perry Streets, a permit to break the surface of, and lay a gas main on, that portion of Birch Street was issued by the proper officers of the city on May 20, 1914, and an 8-inch main was thereupon laid. Upon the petition (as required by Act of June 27, 1913, art. v, § 3, pars. 8 and 10, P. L. 568) of the school district, which desired to use the property as a site for a new high school building, made urgently necessary by the crowded condition of certain schools, the council of the city, on Feb. 2, 1921, vacated that portion of Birch Street, reciting in the vacating ordinance that the action was taken at the request of the school district—a circumstance, it would appear, which, apart from the statutory requirement above referred to, can be deemed of no significance. See Mayor *v.* Randolph, 4 W. & S. 514, 516; McGee's Appeal, 114 Pa. 470, 477. There was also between the city and the school district an agreement entered into whereby the latter undertook to save the city harmless from any claim for damages that might be made against it by reason of the

2 D. & C.

vacation of the street. Contracts for the construction of the proposed school building having been awarded and the excavations begun, the presence of the gas main was discovered. As it was found to be located, it would pass through the basement of the proposed building about three feet from the floor, and would be highly undesirable as well as certain to seriously interfere with and retard the building operations already in progress. The school district thereupon requested the gas company to remove the main. The gas company expressed its willingness to do this in such a way as to satisfy the desires and needs of the school district. But it was willing to do it only at the expense of the school district, and refused to incur any obligation or spend any money in that behalf. Hence this bill in equity, praying for an injunction, both prohibitory and mandatory, against the gas company, restraining it from maintaining the existing obstruction and compelling it to remove the same. A preliminary injunction was granted, and in due course came up for hearing, at which the counsel for the gas company moved for the dissolution of the preliminary injunction and a dismissal of the plaintiff's bill. It was also stated by counsel on both sides that there is practically no disagreement between the parties except the matter of payment of the cost of removal of the main.

The legislation of the Commonwealth affecting this case and the pertinent adjudications on the questions raised seem to leave no doubt as to the proper decision at this time. It is well understood that the remedy of injunction is applicable only to cases in no respect equivocal (Pattern Co. *v.* Whitner, 215 Pa. 193), and that as to preliminary mandatory injunctions the teaching of our law, as gathered from numerous cases, among which may be cited Whiteman *v.* Fuel-Gas Co., 139 Pa. 492; Fredericks *v.* Huber, 180 Pa. 572; McCabe *v.* Watt (No. 1), 224 Pa. 253, and McCabe *v.* Watt (No. 2), 224 Pa. 259; Washington Borough *v.* Steiner, 19 Pa. Superior Ct. 498; Taylor *v.* Sauer, 40 Pa. Superior Ct. 229, is that such an injunction may issue in a case in which the right set up as its basis is free from doubt and its violation wilful and unjustifiable. Nor must it be overlooked that, according to the "balance of injury" doctrine, the action of the chancellor upon application for a preliminary decree will be largely influenced by the consideration whether disproportionately greater harm will result to the one party than benefit to the other from the granting of the relief prayed for: Evans *v.* Fertilizing Co., 160 Pa. 209, 224. The application of this principle makes strongly in support of the position of the plaintiff. And it is self-evident that the admission of counsel that the only contested point is the matter of payment for the cost of removal of the pipe is a concession that the decisive facts and the clear right to the relief sought are beyond controversy.

The power of the city to "lay out, open, widen, . . . any street, avenue, alley or lane, . . . or to vacate and discontinue the same whenever deemed expedient for the public good," is established by the Act of June 27, 1913, art. v, § 3, par. 8, P. L. 568. The Act of Feb. 27, 1849, § 3, P. L. 90, declares "That whenever any highway, street, court or alley shall be vacated, or hath been vacated, by authority of law, the adjoining owner or owners shall be authorized to reclaim the same to the centre thereof," . . . of course, freed from encumbrances such as here exists; for the right of the free use and enjoyment of property is the right of property itself: Hutchinson *v.* Schimmelfeder, 40 Pa. 396, 398. It seems perfectly clear, therefore, that the vacation of Birch Street was within the lawful powers of the city council, and that it vested the title to the ground occupied by the street in the school district as the abutting owner on both sides, and entitled to claim the whole of

the street and to enforce its right as such owner against the gas company by appropriate legal proceedings, among which it appears that an appeal to equity and the power of issuing an injunction is to be included. See Pittsburgh *v.* Gas Co., 34 Pa. Superior Ct. 374, where the remedy invoked and applied was an injunction. It follows, in other words, that the land occupied by the gas main belongs now as land to the school district, with the right to have it free from any easement, and that it is the duty of the defendant company to remove the obstruction it maintains on that street interfering with the building operations of the school district. Nor is there anything inequitable about that conclusion. The defendant company, when it laid its main on Birch Street, knew that it could only do so subject to the right of the city to change or vacate the street, and that such action would require the removal of the main. Says Judge Rice, in Pittsburgh *v.* Gas Co., 34 Pa. Superior Ct. 374, 383: "Whatever right the gas company acquired was subject, in so far as the location of its pipes in any particular part of the street was concerned, to such future regulations as might be required in the interests of the public health and public welfare."

So, in Easton *v.* Miller, 69 Pa. Superior Ct. 554, 559, Judge Head says: "A company accepting a franchise that involves a use of the public streets of a city or other municipality must accept it subject to the continuous right of such municipality to perform its strictly legal functions and obligations, even though such performance may entail some expense upon the holder of the franchise in readjusting its pole lines, water and gas pipes, street car tracks and the like to the new situation brought about by the lawful act of the city."

And it is said by Mr. Justice Stewart in Gas and Water Co. *v.* Scranton, 214 Pa. 586, 591, after quoting from Rafferty *v.* Traction Co., 147 Pa. 579, that: "It is unnecessary to cite other authority to show that no liability results to the municipality for the disturbance of a gas or water company's pipes in the public streets when made necessary by public consideration."

It seems plain that the right of the city to vacate a street is not subject to any liability for damages except as specially imposed by statute: Pittsburgh *v.* Gas Co., 34 Pa. Superior Ct. 374, 382. And see Gas and Water Co. *v.* Scranton, 214 Pa. 586, 591; McGee's Appeal, 114 Pa. 470, 477, where it is said that the vacation of a street by a city and the appropriation of the ground by the abutting owners would not, in the absence of any special legislative provision for damages, be subject to the constitutional condition that compensation shall be first made for property taken, injured or destroyed. Let it be granted for the purposes of argument in this case that a liability for damages for the vacation of a street may arise against the city under the Act of June 12, 1893, P. L. 459, and paragraphs 47 and 48, section 3, art. v, of the Act of June 27, 1913, P. L. 568, which respectively provide as follows:

(Act, 1893.) "Section 1. That all municipal corporations . . . shall have power, whenever it shall be deemed necessary in the laying out, opening, widening, . . . or vacation of streets or alleys, to take, use, occupy or injure private lands, . . . and in case the compensation for the damages or the benefits accruing therefrom have not been agreed upon, any Court of Common Pleas of the proper county . . . shall appoint three . . . viewers," etc., etc.

(Act, 1913.) "47. That the municipalities of the Commonwealth shall have power and authority to vacate, in whole or in part, all streets, lanes and alleys within their corporate limits laid out by this Commonwealth, whenever the same or the portion to be vacated shall have remained unopened for a continuous period of thirty years next preceding such vacation."

2 D. & C.

Reading School District v. Consumers' Gas Company.

"48. In the exercising the power aforesaid, all proceedings for the ascertaining of damages and the assessment of benefits incident thereto shall be as now provided by law in reference to payments of costs, damages and expenses of public improvements within municipal corporations."

Under these enactments, recovery against the city would seem to be in a proceeding by view and assessment of damages according to the familiar method, which can be pursued as well after the removal of the pipe as before; and it is to be noted that none of the enactments above cited require compensation or security for compensation before the city's action in vacating the street shall become effective.

It may be added, in conclusion, that the decision of this court in Reading v. Gas Co., No. 344, Equity Docket, 1884, relied upon by defendant's counsel, appears to deal only with the right of the defendant under the statute constituting its charter to lay pipes in streets of the city without special license.

And now, Feb. 20, 1922, it is ordered, adjudged and decreed (1) that the preliminary injunction heretofore granted be continued to final hearing; (2) that the Consumers' Gas Company, defendant, be directed forthwith to remove its pipe from the block or square bounded by 12th and 13th and Marion and Perry Streets; and (3) that this decree be without prejudice to the gas company's right, if any it shall have, to claim and proceed for the recovery of damages arising from the vacation of Birch Street in said block or square.

From Wellington M. Bertolet, Reading, Pa.