## Dalton Street Railway Co. v. Commonwealth

*David J. Reedy, Reese H. Harris, Cole B. Price,* and *John H. Price,* for plaintiff.

*Robert E. Scragg* and *Ernest D. Preate,* for defendant.

EAGEN, J., August 4, 1945.—This is an appeal by plaintiff from a decision of the board of viewers refusing an award. By agreement the issue was tried before the writer without a jury. There are two cases which by agreement were consolidated and tried as one case. Both will be disposed of in this one opinion.

Plaintiff, Dalton Street Railway Company, a Pennsylvania corporation, continuously from the year 1906 until September 20, 1932, operated a street railway system from North Main Avenue in the City of Scranton to the town of Factoryville, Wyoming County. On July 18, 1932, the City of Scranton contracted with the Commonwealth of Pennsylvania through the Secretary of Highways, under the Act of June 22, 1931, P. L. 720, for the reconstruction of West Market Street. It was over West Market Street that this railway system operated in the City of Scranton from the city line down to North Main Avenue. On September 20, 1932, the railway's operation within the city limits was forcibly prevented by the erection of wooden barricades and the tearing up and removal of the rails by city employes. See Dalton Street Railway Co. v. Scranton, 326 Pa. 6. As a result of this action on the part of the city, plaintiff company ceased to operate its railway at any point from that date on and subsequently (February, 1934) sold its rails and ties which made up the system outside the city limits for junk.

In the years 1936 and 1937 the Commonwealth constructed an improved highway from the Scranton City line to the Borough of Clarks Summit and in doing so used a considerable portion of the right of way previ-

ously utilized by plaintiff company in the operation of its railway system. As a result, this action was instituted asking damages from the Commonwealth for the value of the land used. The board of viewers refused an award and this appeal followed.

For the purpose of this opinion, the right of way involved must be divided into two sections: (1) That running from the Scranton City line to the White M. E. Church, North of Chinchilla, in South Abington Township; and, (2) that running from the White Church to the Clarks Summit Borough line. The right to the use of the first section arises out of an agreement (October 13, 1906) between the Providence and Abington Turnpike and Plank Road Company, the Northern Boulevard Company, and Northern Electric Street Railway Company granting the latter, its successors and assigns, a right of way in perpetuity for its cars, tracks, poles, etc., over, along, and across the land involved. Plaintiff company later succeeded to and became vested with the rights of the Northern Electric Company under this contract. The right to the use of the second section described arises out of a grant from the Abington Dairy Company on December 30, 1905, providing as follows:

"The free and uninterrupted use, liberty and privilege of and passage in, along and over a certain piece of land or railway bed situated in the Township of South Abington . . . (here follows description of land thirty (30) feet wide by twenty-one hundred (2100) feet long) . . . containing an area of about sixty-three thousand (63,000) square feet of land together with the exclusive right *to use and occupy said right of way for so long a time as same shall be used and occupied for a railway.*"

A portion of this section of the right of way was owned in fee by plaintiff company but the fee land is not involved herein because the Commonwealth purchased it from plaintiff and paid for it.

Since the construction of the new highway in 1936 and 1937 plaintiff company did not make any attempt or request to relocate its track facilities thereon.

We shall first discuss plaintiff's present rights in regard to the second section of the right of way or that from the White Church to the borough line. In the original grant upon which plaintiff's rights are based, the use of the land involved was restricted for so long a time as it was occupied as a railway. It is our conclusion from an examination of the deed from the Abington Dairy Company that it was the intent and purpose of the parties thereto to grant the right to use the land for a railway and that when the particular use ended the land was to revert to the grantor. If this is correct, the land reverted and plaintiff lost its interest therein long before the Commonwealth used the land for the construction of the new highway. Plaintiff company clearly abandoned this particular section of the right of way long before the alleged taking.

In Norton v. Duluth Transfer Railway Co. et al., 129 Minn. 126, 151 N. W. 907, the deed in question contained a granting clause of "grant, bargain and sell" to the railroad company, its successors and assigns, and a habendum clause "to have and to hold the same . . . unto the said party of the second part for and so long as the same shall be used as a right of way for tracks and a railroad way for its cars", etc. The court said (p. 130) :

"A reading of the same leaves in our minds no fair doubt of the intention of the parties. The land conveyed was taken from a larger tract and was a narrow strip 75 feet wide by about 3,000 in length. The railroad company desired it for a particular purpose, namely, as a right of way, and the grantors were willing to convey for that use. The deed contains no language indicative of an intention that an absolute and unqualified title should pass to the grantee. The significant word, generally found in deeds of real property,

'forever', does not follow the clause 'to have and to hold the same,' but instead thereof it reads 'to have and to hold the same . . . for and so long as the same shall be used as a right of way.' This language appears in the *habendum* clause, where usually all limitations upon the estate granted are found, if any be imposed. And no other language or clause is found which in any way impairs or detracts from the clause 'for and so long as the same shall be used as a right of way.' The only conclusion, as it seems to us, is that the parties intended by the deed to convey to the company an easement only, and to vest in the company the right to hold and use the land so long as it was devoted to the purpose stated, and no longer."

See also Reifler & Sons v. The Wayne Storage Water Power Co., 232 Pa. 282, and Baltimore & Ohio Railroad Co. et al. v. Bond et ux., 345 Pa. 360, where the owner of a farm granted to a railroad company, plaintiff's predecessor, a right of way over his land "for so long as the same shall be required for the use and purpose of the said road" and the railroad later abandoned the right of way so far as an operating railroad was concerned. In that case the court held (p. 362) :

"From the foregoing language it is clear, that the intent and purpose of the grant was, that a railroad should be located and operated through the grantor's land, advantaging his property, and when the railroad ceased to operate, the grant should terminate."

We conclude, therefore, that plaintiff owned no interest in the land involved in the second section of the right of way at the time the Commonwealth made use thereof.

Now as to the section of the right of way extending from the city line to the White Church, the source of title to this right of way was the Providence and Abington Turnpike and Plank Road Company, incorporated under the Act of April 8, 1853, P. L. 343.

A turnpike under the law is a public highway, constructed by virtue of public authority and for public

purposes. See McManus' Appeal, 5 Pa. Superior Ct. 65, People's Telephone & Telegraph Co. v. Berks and Dauphin Turnpike Road, 199 Pa. 411, and Carter v. Ridge Turnpike Co., 208 Pa. 565. The character of the turnpike as a public highway is not destroyed by a forfeiture of the charter of the company or by the abandonment of the road. See Derry Township Road, 30 Pa. Superior Ct. 538. The fee after dissolution of the turnpike company still remains in its successors but just as in the case of an individual owner it is burdened with the public easement: 1 Elliot on Roads and Streets, §80, p. 104.

In Stevenson's Appeal, 17 W. N. C. 429 (1886), the court said as to a turnpike:

"No private occupancy for whatever time, either adverse or permissive, vests a title inconsistent with the public use. . . . No title can be acquired against the public by user alone, nor lost to the public by nonuser. A turnpike is a public highway . . . ."

"A turnpike . . . is a highway, notwithstanding the fact that the beneficial interest in the form of tolls is in the private corporation or company": Elliot on Roads and Streets, §79.

It seems clear, therefore, that the occupancy of a turnpike or a public highway by a public utility company is always subject to the superior right of the public.

There is much Pennsylvania authority indicating that a duty rests upon the public utility to adjust their structures in accordance with the need of public progress and improvement.

In Lewistown-Reedsville Water Co. v. Hughes et al., 49 Dauph. 18, the predecessor in title of plaintiff therein had a water pipe right of way agreement with a turnpike company. Thereafter the turnpike company sold the highway to the Commonwealth, subject to the right of way, and the Commonwealth then made the highway part of the State Highway system. The court after

holding that the water company was not entitled to reimbursement for the relocation of its water pipes said (p. 26) :

"We are of the opinion that, the water company with its pipes and equipment originally, on a public highway, the same now being a part of the public highway system of the state is subordinate to the interest of the public and that the state within its police powers had full authority to command the water company to change the location of its water pipes which it did.".

A similar question was presented in Philadelphia Electric Co. v. Philadelphia, 301 Pa. 291, wherein the City of Philadelphia entered upon an extensive subway improvement, as a result of which facilities of the utility company had to be relocated. The court decided that the utility company had to bear the expense of moving its conduits and said, inter alia (pp. 299, 300, 301) :

"In the course of construction of this municipal enterprise it was found that conduits of plaintiff, as then located, hindered and prevented the proper completion of the project, intended for public use. The shifting and relaying of the structures was a matter of pressing and immediate public concern. Hindrance and delay in the construction by reason of the location of plaintiff's property meant not only increased cost to the city, but also a serious public inconvenience and that such continued incompletion, or an improper completion, would unquestionably amount to nothing less than jeopardy to public safety. Before these imposing public necessities, private rights may not stand as a barrier; and in the present instance the conduits were subject to the regulatory control of the municipality under its police power (Springfield Con. Water Co. v. Phila., 285 Pa. 172, 175; Pittsburgh v. Gas Co., 34 Pa. Superior Ct. 374) and by its acceptance of the provisions of the ordinances and rules and regulations governing its right to enter upon and use the streets, plaintiff was

obliged to defray the cost of moving and relaying its conduits and other property in accordance with the principle set forth in many declarations of this court: Allegheny v. Millville, Etna & Sharpsburg Street Railway Co., 159 Pa. 411; Davis v. Gray, 16 Wall. 231. . . .

"The franchise, and not the particular location, is the essence of the contract, and the city under its power to regulate might compel, for instance, a railway company to remove its tracks from the center to the side, or from the side to the center of the street: Grand Trunk Western Ry. v. South Bend, 277 U. S. 544, 553 . . ."

In the present case the deed from the turnpike company granted a right of way 16⅔ feet wide, but its exact location is not specified. Apparently the railway company had the right to change the position of its rails anywhere within the 50 feet making up the turnpike or highway. It still has that right but fails to avail itself thereof. The Commonwealth has not denied plaintiff this right and neither has plaintiff made any attempt to use it. The expense incidental to changing the grade and location of the railway tracks because of the improvement of the highway is what is known in the law as consequential damages and as such are not compensable. See Phila. Electric Co. v. Commonwealth et al., 311 Pa. 542, wherein the court decided that plaintiff utility corporation was not entitled to compensation for expense incurred in relocating its facilities in the city streets, such relocation being made necessary by the construction of the Delaware River Bridge. The court said (p. 544):

"Despite appellant's assertion that its claim is for damages incurred directly, we are of opinion that any loss suffered by it in making the relocations above referred to was consequential, being merely incident to the construction of the bridge. As stated by the court below: 'There was no taking of any portion of the

plaintiff's property, it was not deprived of its easement and the only damage of which it complains is the cost of relocating its conduits and light standards [in the streets] to make them conform with the new [established] grade' ".

See also Heil v. County of Allegheny, 330 Pa. 449 (1938), McGarrity, Admr., v. Commonwealth, 311 Pa. 436 (1933), Soldiers and Sailors Memorial Bridge, 308 Pa. 487 (1932), State Highway Route No. 72, 265 Pa. 369, affirming 71 Pa. Superior Ct. 85 (1919), Saeger v. Commonwealth, 258 Pa. 239 (1917), Heid v. Allegheny County, 122 Pa. Superior Ct. 312 (1936), Berks & Dauphin Turnpike Road v. American Telegraph & Telephone Co., 240 Pa. 228 (1913), and Phila., Newton Etc. R. Co.'s Appeal, 120 Pa. 90.

Therefore, we conclude the right of way enjoyed by plaintiff was not limited to any particular portion of the highway and could not be inconsistent with the public use. Plaintiff company still has the same right in the first section to occupy the highway which it may exercise when it sees fit but the expense incidental to the removal of the tracks to the new grade and location must be borne by plaintiff.

Then again before any portion of the right of way was used by the Commonwealth, plaintiff company sold the portions thereof owned in fee to the Commonwealth. This left the use of right of way impossible since it was not continuous but was filled with gaps throughout and became disconnected pieces.

Wherefore, August 4, 1945, judgment is entered for defendant. This is a decree nisi to become absolute and final unless exceptions thereto are filed within 30 days from this date.